STATE of Minnesota, Respondent,

v.

Charles Wilson WARE, Petitioner, Appellant.

No. C9–91–2289.

Supreme Court of Minnesota.

April 16, 1993.

John M. Stuart, State Public Defender, Michael F. Cromett, Asst. State Public Defender, St. Paul, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Linda K. Jenny, Asst. County Atty., Minneapolis, for respondent.

COYNE, Justice.

In an unpublished decision the court of appeals affirmed the conviction of defendant Charles Wilson Ware of second-degree intentional murder. *State v. Ware,* C9–91–2289, 1992 WL 189447 (Minn.App., filed August 11, 1992). We granted defendant's petition for review in order to examine the circumstances surrounding the polling of the jurors during the return of their verdict, which was done in defendant's absence and after the courtroom had been cleared of spectators because of some spectators' disruptive conduct. From our review of those circumstances, we conclude that in the interests of justice defendant should receive a new trial.

Defendant was present during the reading of the verdict, but immediately thereafter, before the jurors were polled, he was removed from the courtroom. According to an affidavit filed during the course of this appeal by the trial judge, Honorable Deborah Hedlund, the prosecutor and the defense counsel told the trial judge before the verdict was read that "they had agreed with the deputies that, to avoid further disruption in the courtroom, Mr. Ware should be taken out of the courtroom immediately after the verdict was read by the jury."

Defense counsel left the courtroom to confer with his client. On counsel's return to the courtroom several minutes later, counsel asked that the jury be polled. He did not ask that defendant be returned to the courtroom.

During the polling of the jurors, one juror, who was sobbing, answered "no" when asked if the verdict was her true and correct verdict. An unidentified spectator interjected, "She said no." The judge then said, "I'm going to exclude parties from the courtroom and from the floor unless you remain absolutely silent." After asking the remaining jurors if the verdict was their true and correct verdict, the trial judge returned to the juror in question and again asked her whether the verdict was her true and correct verdict. When unidentified spectators began to clap, the trial judge allowed a deputy to clear the courtroom of spectators.

The trial judge then told the juror in question, number 4, that she was not sure she had heard her answer and needed an audible answer. The judge added, "[I]f you need to consider it longer, we're certainly going to give that time." The following exchange then occurred:

Juror No. 4: It doesn't matter. I haven't anything to say. Everybody else—I want to believe what he said: no one else does.

The Court: Well, let me ask you this: Do you need more time to consider your verdict or have you—have you personally arrived at a verdict of yes or no that a guilty verdict is the correct verdict?

Juror No. 4: The evidence shows that he's guilty, but myself, I don't want to believe he is.

The Court: Well,—

Juror No. 4: But you have to go by the rules * * * go by the rules.

The Court: Do you understand the question that I've put to you? A verdict of guilty has been returned. The jury is being polled as to whether or not that's your personal true and correct verdict. Is the answer to that question yes or no?

Juror No. 4: The evidence shows that he was guilty. There wasn't enough evidence to show that he wasn't guilty, so I have to say yes. I just in myself believe that—I want to believe that he's telling the truth.

The Court: Okay. Well, you had the jury instructions with you in the room. It asks you to dispassionately rule on the evidence, and that's a difficult task. Because eleven people feel one way and you

feel a different way doesn't mean that you aren't entitled to your convictions. Now, the question is whether you are satisfied that the State has proven the case of murder in the second degree, each of four elements, beyond a reasonable doubt so that you are satisfied that it's appropriate to return a verdict of guilty.

Juror No. 4: With the evidence that was presented, yes.

■ The trial judge then excused all the jurors but the juror in question and said she wanted to ask the juror out of the presence of the other jurors if the verdict was her true and correct verdict. The juror said it was her true and correct verdict and that her verdict would not change if she were given more time to think about it.

Minn.R.Crim.P. 26.03, subd. 1(1) provides:

> The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules.

As we said in *State v. Thompson,* 430 N.W.2d 151, 152 (Minn.1988), the right to be present under the rule is broader than the right to be present under the Federal Constitution. We need not address the question whether a criminal defendant has a constitutional right to be present during the return of the verdict, including the polling of the jury, because it is clear that in Minnesota a criminal defendant has such a right under the rule. The court of appeals narrowly construed the phrase "re-

turn of the verdict" to refer only to the reading of the verdict and not to include the polling of the jury after the verdict has been read. A defendant has a right to a polling of the jury upon request, Minn. R.Crim.P. 26.03, subd. 19(5). In our opinion, a defendant is entitled to insist that the jurors be required, in a sense, to look defendant in the eye and answer whether or not the verdict is their true and correct verdict.

The right to be present may, in certain circumstances, be forfeited. Thus, *e.g.,* in *State v. Thompson,* 430 N.W.2d 151, 152–53 (Minn.1988), when the issue was whether a defendant was entitled to relief because he was not present at an evidentiary hearing held outside the presence of the jury, we held that the defendant forfeited his right to be present by not asserting the right to be present at the hearing. We are less inclined to rely on the doctrine of forfeiture where the defendant, as here, is not present during proceedings actually occurring in open court.[1] We conclude that a trial court ought not proceed with the return of the verdict, including the polling of the jury, in the absence of the defendant unless the defendant has waived the right to be present. Moreover, this decision to waive is a decision not for counsel to make but a personal decision for defendant to make after consultation with counsel.

■ Of course, the fact that a personal waiver does not appear of record on appeal does not mean that there was no waiver.[2] Furthermore, even if a defendant is wrongly denied the right to be present, the defendant is not entitled to relief if it can be said that the error was harmless error beyond a

---

1. We cannot completely foreclose reliance on the forfeiture doctrine with respect to proceedings occurring in open court. Indeed, Minn. R.Crim.P. 26.03, subd. 1(2)(1) expressly provides that a forfeiture of the right to be present occurs if a defendant "voluntarily and without justification absents himself or herself after trial has commenced." *See also Taylor v. United States,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (holding that forfeiture occurs in these circumstances). The rationale for this provision is set forth in *Crosby v. United States,* — U.S. —, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993).

2. *Cf., State v. Smith,* 299 N.W.2d 504, 506 (Minn.1980) (fact record on direct appeal does not show personal waiver by defendant of right to testify does not establish that the defendant was denied right to testify or failed to waive the right; "without anything in the record suggesting otherwise we must presume that the decision not to testify was made by defendant voluntarily and intelligently"; the only way to overcome the presumption would be for the defendant to petition for postconviction relief and establish lack of a waiver of the right).

reasonable doubt.[3]

In this case, we do not know the circumstances leading to defense counsel's agreement with the prosecutor that defendant should be removed from the courtroom immediately after the reading of the verdict but before the polling of the jurors. Moreover, given the strength of the evidence against defendant, it is conceivable that even if defendant was wrongly denied his right to be present we might hold on a different record that the error was nonprejudicial.

Defendant's absence, however, is only one of three things troubling us about the polling of the jury. We are also troubled by the manner in which the trial court questioned the jurors and by the trial court's excluding all the spectators during the polling, not just those who were breaching the peace and civility of the courtroom.

■ I ABA Standards for Criminal Justice 6–3.3 (2 ed. 1979), dealing with the "Judge's Use of Power to Maintain Order," provides:

The trial judge has the obligation to use his or her judicial power to prevent distractions from and disruptions of the trial. If the judge determines to impose sanctions for misconduct affecting the trial, the judge should ordinarily impose the least severe sanction appropriate to correct the abuse and deter repetition. In weighing the severity of a possible sanction for disruptive courtroom conduct to be applied during the trial, the judge should consider the risk of further disruption, delay, or prejudice that might result from the character of the sanction or the time of its imposition.

■ Without a doubt a trial court may, in the appropriate exercise of its discretion, exclude spectators when necessary to preserve order in the courtroom. The record here discloses that the conduct of onlookers was disruptive of the trial. The trial judge found it necessary to admonish the spectators on several occasions during the course of the proceedings. One spectator was asked to leave and the judge warned the spectators more than once that further interruptions by spectator conversation would result in their exclusion from the courtroom. On one occasion defense counsel asked the spectators for silence.

Nevertheless, the reason for exclusion of spectators is to maintain order in the courtroom, and a trial court should exclude no more people than is necessary to serve that purpose. *State v. Schmit*, 273 Minn. 78, 81–82, 139 N.W.2d 800, 803 (1966). *Cf.*, *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), and *Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

Here the record is not very illuminating with respect to the events which occurred when the jury returned to the courtroom with its verdict, and it is not sufficient to establish justification for allowing the deputy to clear the courtroom completely, as opposed to directing the deputy to remove those spectators who were disrupting the polling process.

With respect to the polling of the jury, III ABA Standards for Criminal Justice 15–4.5 (2 ed. 1980) provides:

When a verdict has been returned and before the jury has disbursed, the jury shall be polled at the request of any party or upon the court's own motion. The poll shall be conducted by the court or clerk of court asking each juror individually whether the verdict announced is his or her verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

Minn.R.Crim.P. 26.03, subd. 19(5) "tracks" the ABA Standard.

---

3. That an appellate court must engage in harmless error impact analysis before awarding a defendant a new trial because of denial of the right to be present is made clear by the United States Supreme Court's decision in *Rushen v. Spain*, 464 U.S. 114, 118, 104 S.Ct. 453, 455, 78 L.Ed.2d 267 (1983), and by our decisions in *State v. Thompson*, 430 N.W.2d 151, 153 (Minn. 1988), *State v. McGath*, 370 N.W.2d 882, 884–84 (Minn.1985), and *State v. Bouwman*, 354 N.W.2d 1, 8 (Minn.1984).

Certainly, a trial court must be accorded some latitude in questioning a juror in order to clarify any confusion arising out of the polling of the jury. But the trial court must take care not to coerce or appear to intimidate the juror. *See, e.g., State v. Tennant,* 173 W.Va. 627, 319 S.E.2d 395, 399 (W.Va.1984); 3 C. Wright, *Federal Practice and Procedure—Criminal* § 517 (2 ed. 1982). Repeated questioning of a juror about whether or not it was his or her true and correct verdict could well be coercive.

We are not prepared to say that the trial judge in this case acted improperly in questioning the juror as she did. However, the synergy of (a) the defendant's removal from the courtroom after the reading of the verdict but before the polling of the jury, (b) the courtroom disruption followed by the removal of all the spectators, and (c) the questioning of the distraught juror by the trial judge may have given the juror in question the implied message that, even though she initially said the verdict was not her true and correct verdict, the correct or expected response on further questioning was to recant and say that, yes, the verdict was after all her true and correct verdict.

In the interests of justice we have concluded that defendant should receive a new trial.

Reversed and remanded for new trial.