STATE of Minnesota, Respondent,

v.

Steven James ERICKSON, Appellant.

No. C1–98–1418.

Supreme Court of Minnesota.

May 18, 2000.

Michael F. Cromett, Assistant State Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, and Patrick A. Oman, Mower County Attorney, Austin, for respondent.

## OPINION

BLATZ, C.J.

On direct appeal of appellant Steven James Erickson's multiple felony convictions, we determined that four errors occurred during his trial. *See State v. Erickson,* 597 N.W.2d 897, 899 (Minn.1999) *(Erickson I ).* We remanded to the trial court for a *Schwartz* hearing to determine the degree of prejudice, if any, caused appellant by the errors.[1] *See id.* The trial

---

1. At a *Schwartz* hearing, the trial judge examines jurors to determine whether and to what degree they were prejudiced by some error committed at trial. *See State v. Shoen,* 578 N.W.2d 708, 716 (Minn.1998) *(Shoen I).* While a *Schwartz* hearing was "originally conceived as a vehicle for the district court to address questions of jury misconduct, its applicability has expanded to address other post-trial issues involving juries." *Id.*

court found that the errors had no effect on the jurors' deliberations or their opinion of appellant's guilt or innocence. After considering the evidence gathered at the *Schwartz* hearing, we conclude that appellant was not prejudiced by the errors and is therefore not entitled to a new trial. Affirmed.

On May 5, 1998, appellant Steven James Erickson was found guilty of aiding and abetting first-degree murder, conspiracy to commit first-degree murder, and the theft of three handguns.[2] Convicted of first-degree murder and theft, appellant was given a life sentence and a concurrent sentence of one year and one day. On direct appeal to this court, appellant raised a number of procedural errors that he claimed rendered his trial unfair. *See id.* Appellant claimed (1) that he was ordered to wear a leg restraint without the trial court making timely findings justifying the order; (2) that the bailiff had improper contact with the jurors during deliberations and that appellant was not present during the trial court's subsequent hearing to determine any prejudice caused by the bailiff's jury contact; and (3) that the jury was allowed to separate during deliberations without appellant's consent. *See id.* Appellant further claimed that his right to due process and a fair trial was violated by the trial court's disparaging treatment of defense counsel.

In appellant's direct appeal, we did not reach the issue of disparaging treatment of defense counsel, but did hold that the trial court erred on the balance of these issues. We further determined that none of the individual errors was serious enough to require a new trial, or to justify a *Schwartz* hearing. *See id.* at 902–04. Nonetheless, we were "concerned that the cumulative effect of these errors may have deprived appellant of a fair trial," and for that reason remanded for a *Schwartz* hearing to determine if appellant was preju-

diced by these errors. *Id.* at 904. Accordingly, the trial court held a *Schwartz* hearing to gather evidence of (1) whether the jury became aware that appellant was wearing a leg brace for security purposes; (2) the nature and scope of the bailiff's improper contact with the jury; and (3) whether the jurors were subject to any improper outside influences during their overnight separation. The trial court found that the jurors were unaware of the leg brace; that they were unaffected by the bailiff's misconduct; and that their separation did not affect their deliberations or their opinion of appellant's innocence or guilt. We now consider the evidence gathered at the *Schwartz* hearing to determine the degree of prejudice, if any, caused appellant by these errors. We also address appellant's claim that the trial court's allegedly disparaging treatment of defense counsel violated appellant's constitutional right to due process and a fair trial.

## I.

First, we examine possible prejudice to appellant caused by the trial court's error in failing to justify the leg restraint it ordered appellant to wear during the trial. In addressing this issue we must determine what, if anything, the jurors knew about appellant wearing a leg restraint and whether that knowledge contributed to the verdict. If the jurors were unaware of the restraint, the trial court's error in ordering the restraint is not presumptively prejudicial. *See State v. Scott,* 323 N.W.2d 790, 792 (Minn.1982). In addition, even if the jurors observed the restraint, and thus the presumption of prejudice applies, the trial court's error will be considered harmless if the guilty verdict is shown to be surely unattributable to the error. *See State v. Shoen,* 598 N.W.2d 370, 377 (Minn.1999) (*Shoen II* ); *State v. Juarez,* 572 N.W.2d 286, 292 (Minn.1997).

---

**2.** For a more detailed explanation of the facts of appellant's case, see *Erickson I,* 597 N.W.2d at 899–901.

Testimony given at the *Schwartz* hearing shows that nine of the twelve jurors were unaware that appellant was wearing a leg restraint during trial. While two of these nine jurors, R.B. and C.S., assumed appellant was restrained, the trial court found that this assumption was unsupported by any actual observations of the restraint.

Three of the twelve jurors believed appellant was wearing a restraint based on their own observations or alleged conversations between jurors. One of the three jurors, T.J., testified that he saw some sort of chain or device on appellant's feet from the jury box, although he was unable to recall what the device looked like and assumed all defendants wore restraints. After the *Schwartz* hearing, the trial court found that T.J. could not have seen what he claimed to have seen because appellant wore no chain or device around his ankle that would have been visible from the jury box. In addition, the trial court found that T.J. did not discuss his "observation" with other jurors and that it did not affect his opinion of appellant's guilt or innocence.

Juror S.M. noticed appellant in the hallway toward the end of the trial and thought he was wearing a leg restraint or walking differently as his legs were not bending normally. Although S.M. testified that she noticed that appellant seemed to pull his pant leg down in the courtroom, she never observed the restraint. Like T.J., S.M. did not discuss her observation with other jurors, and testified at the *Schwartz* hearing that nothing about this observation affected her deliberations on appellant's guilt or innocence.

M.S. is the only juror who testified that there might have been some discussion among the jurors concerning appellant's leg restraint. However, as M.S. was questioned further, it became apparent that she had made no personal observation of appellant's restraint. She also indicated that the discussion, if it occurred at all, was a "general conversation" rather than a discussion of someone's actual observation of appellant's restraint.

Having reviewed the jurors' testimony in conjunction with the trial court's findings of fact and memorandum, we conclude that the jurors were unaware of appellant's restraint inside the courtroom.[3] Because the jurors were unaware of appellant's restraint, there is no presumption of prejudice. *See Scott*, 323 N.W.2d at 792. Accordingly, it is unnecessary to perform harmless error analysis.

## II.

Next, we must determine the extent of any prejudice to appellant caused by the bailiff's improper contact with the jury during trial. We held in *Erickson I* that the bailiff violated Minn. R.Crim. P. 26.03, subd. 5(1), when he brought in an enlarged diagram not received into evidence and suggested to the foreman that the jurors "review the video" tape if they were unsure of the layout of the back of the victim's house. *See Erickson I*, 597 N.W.2d at 902. One of the purposes of the *Schwartz* hearing was to determine the nature and scope of the bailiff's improper contact, as well as any prejudicial consequences. *See id.* at 904.

We have held that private communication with a juror is presumptively prejudicial. *See State v. Sanders*, 376 N.W.2d 196, 205 (Minn.1985); *State v. Cox*, 322 N.W.2d 555, 558 (Minn.1982) (citing *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954)). To rebut the presumption, the state must show "beyond a reasonable doubt that the asserted

---

3. The only juror who the trial court found to be aware of the restraint was S.M. However, the trial court also found that S.M.'s knowledge was based on her observation of appellant in the hallway – not the courtroom – and was not shared with the other jurors. This

alleged observation does not indicate prejudice. As we stated in *Shoen II*, the sight of a criminal restrained during transport is "likely to be seen for just what it is – standard law enforcement practice." 598 N.W.2d at 378.

error did not contribute to the verdict obtained." *Cox*, 322 N.W.2d at 558.

■ When determining whether the state has met its burden of rebutting the presumption of prejudice, *Cox* instructs courts to "determine from juror testimony what outside influences were improperly brought to bear upon the jury and then estimate their probable effect on a hypothetical average jury." *Id.* at 559. The relevant factors to be considered are (1) the nature and source of the prejudicial matter; (2) the number of jurors exposed to its influence; (3) the weight of the evidence before the jury; and (4) the likelihood that curative measures were effective in reducing prejudice. *See id.*

■ When the trial court became aware of the improper conduct in the instant case, it proceeded to sentence appellant and then held a hearing two days later to determine the extent of the bailiff's contact with the jurors. Only the bailiff and the jury foreman testified at this hearing.[4] The trial court found that while the jury was deliberating, the foreman left the jury room and asked the bailiff if the jury could have the large diagram of the victim's house which was used by both parties throughout the trial. While the large diagram was an enlargement of a diagram already admitted into evidence, the large diagram itself had never been admitted.

After the completion of the post-trial hearing, the trial court found the following: the bailiff brought the large diagram into the jury room between 9:00 and 9:30 p.m., shortly before deliberations ended for the night. After deliberations had ended for the night, the bailiff informed the judge that the jury had requested the large diagram and the judge then instructed the bailiff not to give the diagram to the jury as it was not in evidence. The following morning, the bailiff entered the jury room before deliberations commenced and re-

moved the large diagram. Only the foreman, J.A., was present at that time. The bailiff told J.A. that he was removing the diagram because it was not in evidence. J.A. told the bailiff that the jury had not looked at the diagram the previous night. The bailiff then suggested to J.A. that the jurors should view the video if they had concerns about the layout of the back of the house.

The trial court found that the bailiff said nothing else to J.A. and spoke to no other jurors. The court further found that by the time the bailiff brought the large diagram into the jury room, the topic of the jurors' deliberations had changed, and that the enlarged diagram was never used as a part of the jury's deliberations. Finally, the trial court found that the large diagram's presence in the jury room had no effect on the jurors' assumptions about appellant's guilt or innocence.

Appellant contests the trial court's findings and instead points to the testimony of two jurors who testified differently than the foreman and the other nine jurors. Specifically appellant focuses on the testimony of jurors R.H. and C.S., who testified that the bailiff brought in the diagram, left, and then returned a few minutes later to retrieve it. This testimony conflicts with the balance of juror testimony that the bailiff returned the next morning to retrieve the diagram. However, the court found that for both R.H. and C.S., the diagram's presence had no effect on their deliberations or assumptions.

A review of the record leads us to the conclusion that the state has met its burden under *Cox* of establishing that the verdict was not tainted by prejudice caused by the bailiff's improper conduct. In addition to the fact that the nature and scope of the improper conduct was quite limited, and the fact that the jurors' expo-

---

4. Appellant was not present at this hearing, and we held in *Erickson I* that this constituted error on the part of the trial court. *See Erickson I,* 597 N.W.2d at 902. However, by agreement of counsel, the transcript of the hearing was made part of the *Schwartz* hearing record for the purpose of our consideration.

sure to the misconduct did not affect their deliberations, the evidence of appellant's guilt, including his confession to two different persons and the testimony of his accomplice, was overwhelming. *See Cox*, 322 N.W.2d at 558.

## III.

Having determined that appellant was not prejudiced by the use of the leg restraint or the bailiff's contact with the jury, we next examine whether any prejudice was caused appellant by the trial court's error in allowing the jury to separate once overnight without appellant's consent, in violation of Minn. R.Crim. P. 26.03, subd. 5(1). *See Erickson I*, 597 N.W.2d at 901–02. Minnesota Rule of Criminal Procedure 26.03, subd. 5(1), allows trial courts, with the defendant's consent, to permit jurors to separate during recesses and adjournments. In *Erickson I* we noted that appellant had made no showing of prejudice, and that the trial court had cautioned the jury three separate times to avoid outside influences. *See id.* at 902. Nonetheless, we were reluctant to view the error as presumptively harmless due to the presence of the other errors discussed above. *See id.*

In *State v. Sanders*, this court set aside the rule first pronounced in *State v. Georgian*, 124 Minn. 515, 517, 145 N.W. 385, 385 (1914), that jury separation was presumptively prejudicial. *See Sanders*, 376 N.W.2d at 206. We held in *Sanders* that "mere separation of the jury in violation of Minn. R.Crim. P. 26.03, subd. 5, without more, does not raise a presumption of prejudice * * *." *Sanders*, 376 N.W.2d at 206.

■ After reviewing the record in this case, we conclude that the erroneous separation did not prejudice appellant. The trial court found that no jurors were contacted in any way by media representatives in regard to the trial or deliberations during the separation. The court further found that eight of the twelve jurors were not exposed to any radio or television, and did not discuss the trial or deliberations

with anyone while separated. Of the four jurors who watched television or listened to the radio during the separation, the trial court found that they avoided the news and heard nothing about the case during the separation. Supporting this is the trial court's finding, following the hearing held two days after the trial, that there was no contemporaneous media coverage of the trial. Importantly, appellant admits in his brief that "there is no direct evidence of any [improper] influence," and that "prejudice is less readily apparent" in the context of this issue. We thus conclude that while the separation was improper, and determined by this court to be error, it is clear from the record that the error caused no prejudice.

## IV.

■ Even though we have concluded from our review of the record that none of the trial errors we recognized in *Erickson I* caused appellant prejudice, we still must determine whether "the cumulative effect of these errors may have deprived appellant of a fair trial." *Erickson I*, 597 N.W.2d at 904. In *State v. Underwood*, 281 N.W.2d 337 (Minn.1979), and *State v. Ware*, 498 N.W.2d 454 (Minn.1993), we granted appellants a new trial due to multiple trial court errors that cumulatively denied appellants a fair trial. In *Underwood*, a jury convicted Underwood of aggravated assault on very conflicted witness testimony. *See Underwood*, 281 N.W.2d at 340. Several errors were committed during the trial: one of the state's witnesses, a police officer, commented on the fact that appellant did not take the stand in his own defense; the state brought in evidence of appellant's other crimes for inadmissible purposes; and the trial court's jury instructions contained an improper credibility instruction. *See id.* at 342–44. On appeal, we held that the cumulative effect of these errors, in a "very close factual case," warranted a new trial, even though individually none of the errors necessarily would have. *See id.* at 344.

Unlike *Underwood*, the facts in the instant case are not close. The evidence against appellant was very strong, and included two confessions and his accomplice's testimony.

This case can also be distinguished from *State v. Ware*. Ware was convicted of second-degree murder after the trial court cleared the courtroom of spectators and polled jurors in appellant's absence. *See Ware*, 498 N.W.2d at 456. The court asked somewhat coercive and intimidating questions, possibly causing one juror to change her original answer. *See id.* at 457–59. As in *Underwood*, we held in *Ware* that these errors may not have warranted a new trial individually, but the "synergy" of the errors required a new trial in the interests of justice. *See id.* at 459. In contrast to *Ware*, the evidence presented here, as well as the trial court's Findings of Fact, Certification, and Memorandum from the *Schwartz* hearing, shows that the errors did not affect the jurors' deliberations or their assumptions about appellant's innocence or guilt. Unlike the situations in *Underwood* and *Ware*, in this case none of the errors prejudiced appellant. Therefore, we hold that the cumulative effect of the trial errors did not deprive appellant of his right to a fair trial, and that appellant is not entitled to a new trial on this basis.

### V.

■ We next address appellant's claim that the trial court frequently departed from its neutral role and disparaged defense counsel, chilling counsel's advocacy and depriving appellant of his right to a fair trial. A new trial is required when the trial court departs from the standards of judicial impartiality and prejudices the losing party's rights. *See Hansen v. St. Paul City Ry. Co.*, 231 Minn. 354, 361–62, 43 N.W.2d 260, 265 (1950).

■ In the instant case, appellant's contention that the trial court repeatedly demeaned defense counsel is not supported by the record. Appellant complains of eight separate exchanges, only two of which occurred in front of the jury. In the first of the two exchanges before the jury, defense counsel was cross-examining the victim's fiancée. Counsel, who was from out of town, asked the witness where the police station was located. The witness said it was "Right here," and after counsel, who clearly did not understand the answer, repeated the question the trial court stated that "[the police station is] connected to the court, counsel." Appellant claims the court's correction of his counsel undermined counsel's credibility with the jury. In the second exchange, the court overruled a defense objection without comment.

■ Exchanges out of the jury's view include one at the bench where the court, in reference to defense counsel's repeated objections, stated that defense counsel's objections were "getting fairly close to being simply obstructionist, and I'm probably not going to sustain additional objections unless they have to do with material matters." When defense counsel complained of the comment, stating "Well, if it's not – Your Honor, if it's [not] material, then why is it even being discussed," the court stated "You have heard my ruling, Counsel." The court then explained in chambers, "The Court's point was not to in any fashion chill Counsel's obligation to act in the fashion that he feels necessary. * * * The choice of the word obstructionist was, perhaps, if not ill chosen, then perhaps not completely correct." Appellant claims this and similar exchanges out of the jury's view had a chilling effect on his counsel's advocacy.

■ We are not persuaded by appellant's argument. Trial courts have discretion in managing the trials before them. *See, e.g., State v. Jones*, 556 N.W.2d 903, 912 (Minn.1996). Based on our review of the record, we conclude that the trial court's statements before the jury did not disparage defense counsel and thereby undermine his credibility with the jury. Further, the court's comments to defense

counsel during bench conferences and in chambers were not caustic or combative in such a way as to chill defense counsel's representation of appellant. Rather, the court's comments demonstrate an effort to keep the trial progressing and focused. Accordingly, appellant is not entitled to a new trial on this ground.

Affirmed.