*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-0799**

State of Minnesota,
Respondent,

vs.

Kevin Lee Anthony,
Appellant.

**Filed May 13, 2024**
**Affirmed**
**Reyes, Judge**

Hennepin County District Court
File No. 27-CR-20-12810

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicole Cornale, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Reyes, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

Following denial of his postconviction petition, appellant argues that he is entitled to a new trial because (1) the postconviction court abused its discretion by denying his petition asserting ineffective assistance of trial counsel; (2) police officers impermissibly testified at trial about appellant's guilt; (3) the district court abused its discretion by

admitting improper character evidence; and (4) the prosecutor engaged in misconduct by improperly eliciting hearsay statements. We affirm.

**FACTS**

On March 13, 2020, while investigating prostitution activities, Officer B noticed an advertisement for "Rose" on MegaPersonals, a website also used for prostitution advertisements. The ad had been posted at 9:39 p.m. and contained multiple pictures and a video of an individual who Officer B later identified as S.S. Officer B noted that the video and photos appeared to have been taken by someone else and that some appeared to be inside a hotel room. The ad contained a contact number, which Officer B found linked to additional online escort advertisements.

Based on his training and experience, Officer B was concerned that a sex trafficker was involved and texted the ad's contact number, "Hey. Are you available?" at 9:59 p.m. A person responded, "Yes I am sweetie." The person instructed Officer B to meet at a hotel in Bloomington. Officer B continued to text with the person on the way there and received the last text from the person at 10:22 p.m.

At approximately 10:23 p.m., Officer B and a second officer, Officer H, approached a man and woman standing outside of the hotel's main entrance. Officer B recognized the woman as S.S. and spoke with her, while Officer H spoke with the man, appellant Kevin Lee Anthony.

Officer B confirmed with S.S. that she was staying at the hotel and working as a prostitute and that the room was booked under S.S.'s name for one night with two guests. S.S. denied texting with Officer B and told him that her phone was in the hotel room.

2

Officer B observed that appellant had a phone. S.S. identified appellant as her boyfriend but denied that he knew she was a prostitute. Officer B observed that S.S. was shaking and appeared to be afraid of appellant. When Officer B later asked S.S. if appellant had anything in the hotel room, he perceived S.S. to nod affirmatively.

Although appellant initially denied being with S.S. and staying at the hotel, he later stated to Officer H that his identification was "in the room." Appellant became confrontational with Officer H, yelled at S.S. to "soldier up" and "stop crying," and repeatedly yelled at her to "stop talking," "don't say sh-t," and not to let the officers go into the hotel room. Appellant repeatedly used S.S.'s name when speaking to her. Later, when Officer B released appellant from the scene, appellant walked to a restaurant next to the hotel to wait for S.S.

Officer B accompanied S.S. to the hotel room to retrieve her belongings. In the room, S.S. immediately grabbed an unlabeled prescription-pill bottle from a coffee table. S.S. denied that it belonged to her or appellant and stated that "we had somebody else here with us." Believing that the pill bottle contained drugs, Officer B arrested S.S. Inside a nightstand in the room, Officer B found numerous unused condoms. While in the hotel, S.S. received phone calls that, based on the caller ID, Officer B observed were from "Kevin." S.S. did not have any cash on her person or in her purse.

Officer B then arrested appellant for drug possession. Based on a search incident to arrest, Officer B confiscated appellant's smartphone-style cell phone, a hotel-room key card, and $460 in cash. Appellant asked Officer B to turn off appellant's cell phone, and Officer B complied. At the jail, however, Officer B turned appellant's cell phone back on

and tried calling the ad's contact number. Appellant's cell phone rang and displayed the police officer's phone number. After further investigation, officers later obtained and executed a search warrant for both appellant's and S.S.'s phones.

Respondent State of Minnesota charged appellant with promoting prostitution of S.S. under Minn. Stat. § 609.322, subd. 1a(2) (2018) (count I), receiving profits from prostitution under Minn. Stat. § 609.322, subd. 1a(3) (2018) (count II), promoting prostitution of another individual, H.N., under Minn. Stat. § 609.322, subd. 1a(2) (count III), and third-degree criminal sexual conduct through force or coercion under Minn. Stat. § 609.344, subd. 1(c) (2018 & Supp. 2019) (count IV).

The district court held a jury trial in February 2022. The state dismissed count IV before trial because S.S. had passed away. The state presented evidence obtained from appellant's and S.S.'s phones, and the jury heard testimony from law-enforcement officers,[1] including Officer B, Officer H, Deputy Chief G, and Detective J; the hotel's manager; and a physician's assistant and a nurse from the hospital where S.S. received treatment the day following her arrest. The jury found appellant guilty of counts I and II and not guilty of count III.

The district court sentenced appellant to 180 months in prison with credit for 303 days served. Appellant filed a notice of appeal. We later stayed this appeal on appellant's motion to permit him to pursue postconviction relief in district court. Appellant petitioned for postconviction relief, alleging ineffective assistance of counsel, and the postconviction

---

[1] The state offered its officer testimony as lay-witness testimony under Minn. R. Evid. 701.

court held an evidentiary hearing in May 2023. In August 2023, the postconviction court denied appellant's petition. We reinstated appellant's direct appeal.

## DECISION

**I. The postconviction court did not abuse its discretion by denying appellant's petition for postconviction relief based on claims of ineffective assistance of counsel.**

Appellant argues that the postconviction court abused its discretion by rejecting his postconviction claims that his trial counsel provided ineffective assistance by failing to (1) challenge both appellant's arrest and its fruits as well as Officer B's search of appellant's phone and (2) conduct legal research before waiving appellant's suppression issues. We are not convinced.

Appellate courts review a postconviction court's denial of relief for an abuse of discretion. *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017). A postconviction court abuses its discretion by exercising "its discretion in an arbitrary or capricious manner, bas[ing] its ruling on an erroneous view of the law, or ma[king] clearly erroneous factual findings." *Id.* (quotation omitted). Appellate courts review legal issues de novo but review factual issues to determine "whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Id.* (quotation omitted).

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial and includes "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quotation omitted). Because a claim of ineffective assistance of counsel involves mixed questions of law and fact, appellate courts review them de novo. *State v. Mosley*, 895 N.W.2d 585, 591 (Minn. 2017). The appellant must

5

show that (1) their "attorney's performance fell below an objective standard of reasonableness," and (2) "a reasonable probability exists that the outcome would have been different, but for counsel's errors." *Id.* (quotation omitted) (citing *Strickland*, 466 U.S. at 668). When determining whether trial counsel's performance was objectively reasonable, an appellate court must consider the totality of the circumstances, but "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption" that an attorney's conduct is reasonable, *id.*, and an appellant "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy," *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). However, "[i]f a claim fails to satisfy one of the *Strickland* requirements, [appellate courts] need not consider the other requirement." *Mosley*, 895 N.W.2d at 591.

Although a single error may support a claim of ineffective assistance of counsel, *Strickland*, 466 U.S. at 691, the "failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel," *Kimmelman*, 477 U.S. at 384. When an appellant's allegation of ineffectiveness is based on "[trial] counsel's failure to litigate a Fourth Amendment claim competently . . . the defendant must also prove that his Fourth Amendment claim is meritorious." *Id.* at 375.

### A.    Failure to challenge appellant's arrest.

Appellant argues that the postconviction court erred by determining that his counsel was not ineffective because the officers had probable cause to arrest him for either drug

6

possession or promoting prostitution, and further maintains that a motion to suppress would have prevailed but for his trial counsel's failure to raise it. We disagree.

"A [postconviction] court's determination as to whether a police officer had sufficient probable cause to conduct a warrantless search or seizure is a question of law, which we review de novo." *State v. Dickey*, 827 N.W.2d 792, 796 (Minn. App. 2013). Whether probable cause exists is an objective inquiry that requires courts to consider the totality of the circumstances and facts, *State v. Williams*, 794 N.W.2d 867, 871-72 (Minn. 2011), including "reasonable inferences that police officers draw from facts, based on their training and experience," *State v. Lester*, 874 N.W.2d 768, 771 (Minn. 2016).

It is unlawful for a person, "while acting other than as a prostitute or patron, [to] intentionally . . . (2) promote[] the prostitution of an individual; [or] (3) receive[] profit, knowing or having reason to know that it is derived from the prostitution, or the promotion of the prostitution, of an individual." Minn. Stat. § 609.322, subd. 1a. "Promotes the prostitution of an individual" includes when a person knowingly "solicits or procures patrons for a prostitute," Minn. Stat. § 609.321, subd. 7(1) (2018), while "prostitution" includes "being hired, offering to be hired, or agreeing to be hired by another individual to engage in sexual penetration or sexual contact," *id.*, subd. 9 (2018).

Here, the ad's contents indicated that S.S. engaged in prostitution, and she later admitted to being a prostitute. Officer B believed that someone else had taken the photos of S.S. that appeared in the ad, which he associated with the promotion of prostitution. S.S. claimed that appellant was her boyfriend, which Officer B knew from experience is common in victim-promoter relationships. S.S. denied having texted with Officer B and

7

did not have a phone, even though Officer B's text exchange with the ad's contact number had concluded immediately prior to the officers approaching the hotel. Appellant had his phone with him and was standing with S.S. when the officers approached. Although he initially denied being with S.S., appellant later repeatedly yelled at S.S. and used her name. Further, when Officer B released him, appellant made comments about his phone and told officers to keep their "eyes off the prize."

Although appellant's original arrest was for drug possession, the record shows that officers had probable cause to arrest appellant for promoting prostitution even before arresting him for drug possession. Appellant has failed to demonstrate that his trial counsel's failure to challenge his arrest fell below an objective standard of reasonableness. *Mosley*, 895 N.W.2d at 591.

**B.      Failure to challenge the warrantless search of appellant's phone.**

Appellant maintains that the postconviction court erred by determining that his counsel was not ineffective because it determined that Officer B did not engage in a warrantless search of his cell phone. We are not persuaded.

The United States and Minnesota Constitutions prohibit unreasonable government searches and seizures of "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. A person seeking to invoke these constitutional rights must demonstrate both "a subjective expectation of privacy" in the area searched and "that the expectation of privacy is reasonable." *State v. Barajas*, 817 N.W.2d 204, 213 (Minn. App. 2012), *rev. denied* (Minn. Oct. 16, 2012). Courts should focus on a person's conduct and "whether the [person] sought to "preserve something as private" when determining whether

8

a person exhibited a subjective expectation of privacy. *Id.* (Quotation omitted). A cell phone's concealed contents are constitutionally protected, but "are not shielded from warrantless intrusion if the [cell phone's] outward appearance betrays its contents." *Id.* at 216; *see also Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.").

The postconviction court determined that, because Officer B obtained the phone from appellant when it was on and the screen was visible to the public, Officer B's "decision to turn the phone off once it [was] in his possession [did not provide appellant] with a legally or socially recognized expectation of privacy to information visible to [Officer B] when he lawfully obtained the phone."

We agree with the postconviction court that Officer B's conduct under these circumstances does not constitute a "search" for Fourth Amendment purposes. Existing caselaw supports that the information obtained by Officer B from calling appellant's phone is not constitutionally protected. *Barajas*, 817 N.W.2d at 213. In *Barajas*, this court concluded that the appellant had a reasonable expectation of privacy in photographs obtained from his flip-style cell phone that were not "shared [by appellant] with the public or third parties" and which "required [the officer] to physically open the [phone], make deliberate key strikes, and navigate the telephone's internal memory" to access. *Id.* at 216. Here, Officer B did not access any of the internal contents of appellant's cell phone. Instead, he turned the phone back on, called the contact number he had obtained from the online ad, and appellant's phone rang and displayed the police officer's phone number.

9

Although Officer B powered appellant's phone on, the phone was on when Officer B initially lawfully confiscated it.

Even assuming that Officer B's call to appellant's cell phone was a "search" for Fourth Amendment purposes, appellant has still failed to establish prejudice. Under the second prong of *Strickland*, "[e]ven if a defendant shows that [a] particular error[] of counsel [was] unreasonable . . . the defendant must show that [the error] actually had an adverse effect on the defense." 466 U.S. at 693. A "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is that "sufficient to undermine confidence in the outcome," and appellate courts must consider the "totality of the evidence" presented to the jury. *Id.* at 694-95.

Considering the totality of the evidence that the state otherwise presented to the jury to support appellant's guilt, including but not limited to Officer B's texts with the ad's contact number continuing until officers reached the hotel, appellant and S.S. standing together when officers approached the hotel, S.S. denying texting with Officer B and not having a phone while appellant did, appellant's statements to officers when Officer B was talking to S.S., "Kevin" calling S.S.'s phone while officers were in the hotel room, and no cash on S.S. while appellant had cash on his person, we are convinced that appellant's trial counsel's failure to challenge Officer B's "search" of appellant's phone did not have "an adverse effect on the defense." *Strickland*, 466 U.S. at 693.

Because we conclude that trial counsel's decision to not seek suppression of evidence obtained from appellant's arrest or from appellant's phone was not objectively

10

unreasonable, and that appellant has failed to show that trial counsel's failure to challenge the officer's "search" of appellant's phone prejudiced him, appellant's claims regarding counsel's failure to conduct legal research also fail.

**II.    The police officers did not testify to legal conclusions.**

Appellant argues that both Detective J and Officer B impermissibly testified about legal conclusions to the jury, which interfered with the jury's finding of appellant's guilt. We address each of appellant's arguments in turn.

"Evidentiary rulings rest within the sound discretion of the district court, and [appellate courts] will not reverse an evidentiary ruling absent a clear abuse of discretion." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). If a defendant objects to the admission of evidence, appellate courts apply a harmless-error standard of review. *State v. Sanders*, 775 N.W.2d 883, 887 (Minn. 2009); *State v. Matthews*, 800 N.W.2d 629, 633 (Minn. 2011). If a party does not object, appellate courts apply a plain-error standard. *State v. Reed*, 737 N.W.2d 572, 583 (Minn. 2007).

**A.    Officer B's testimony regarding promotion of prostitution.**

Appellant initially notes that, although he did not object to Officer B's testimony at trial, his pretrial motion in limine included his objection, and the district court ruled on his motion. *See State v. Litzau*, 650 N.W.2d 177, 183 (Minn. 2002) ("Ordinarily, a party need not renew an objection to the admission of evidence to preserve a claim of error for appeal following a ruling on a motion in limine.").

Because the district court stated that it did not "want there to be a legal conclusion by the officers," we apply the harmless-error standard of review. *Sanders*, 775 N.W.2d at

11

887.  Under the harmless-error standard, a new trial is warranted "only when [an] error substantially influences the jury's decision." *State v. Valtierra*, 718 N.W.2d 425, 435 (Minn. 2006) (quotation omitted).

Witness testimony may be admissible when it helps the jury "by illustrating the witness's perception in a way that the mere recitation of objective observations cannot." *State v. Pak*, 787 N.W.2d 623, 629 (Minn. App. 2010).  Lay-witness testimony is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *Id.*; Minn. R. Evid. 701.

At trial, Officer B testified that his "suspicions grew that [appellant] was promoting the prostitution of [S.S.]."  The prosecutor also later asked Officer B: "Based on your training and experience, [Officer B], your observations at the -- that location at the [hotel], based on your conversations with [S.S.] and hearing the defendant yelling things at her, were your suspicions regarding promotion of prostitution activities by the defendant continuing thereafter?"  Officer B answered, "Yes."

Officer B did not testify to the legal conclusion that appellant was guilty, but only that Officer B was suspicious that appellant was promoting prostitution and that his suspicions continued throughout the investigation based on his training, experience, and observations.  The district court did not abuse its discretion by admitting Officer B's testimony.

**B.      Detective J's testimony regarding appellant's guilt.**

During trial, the prosecutor asked Detective J:

> Yesterday you read the jury the messages between Mr. Anthony and [S.S]. Based on your training and experience what stood out to you when you reviewed these messages?

After the district court overruled appellant's objection to that question, Detective J answered:

> It appeared to me that Mr. Anthony was sort of orchestrating the prostitution of [S.S]. It was very clear by the text messages that he was the one speaking with potential sex buyers making
> . . .

The district court instructed the jury to disregard this testimony after determining that the question would introduce opinion evidence, which the state had acknowledged it would not elicit.

Although appellant argues that the district court's failure to sustain his "objections to [Detective J]'s testimony permitted the jury to convict [appellant] based on improper opinion testimony," the district court instructed the jury to disregard the testimony. Even assuming without deciding that an error occurred, "the jury must be presumed to have followed the court's instructions and to have disregarded any question to which an objection was sustained." *State v. Steward*, 645 N.W.2d 115, 122 (Minn. 2002); *see also State v. James*, 520 N.W.2d 399, 405 (Minn. 1994) ("Jurors are presumed to follow instructions."). Further, unlike other cases when we have granted a new trial, here the record is replete with evidence to support appellant's conviction. *E.g., State v. Hogetvedt*, 623 N.W.2d 909, 915 (Minn. App. 2001) (granting appellant new trial when victim

13

recanted prior statements of appellant's guilt and officer ignored district court's pretrial instruction by testifying to his belief that appellant was guilty, and that testimony prejudiced appellant), *rev. denied* (Minn. May 29, 2001). Medical personnel testified that S.S. reported being "pimped out" and forced to perform sexual acts by a man before and on the date of her arrest. Investigators found photos and video of S.S matching those in the MegaPersonals ad on appellant's phone. Appellant's email inbox contained emails regarding the MegaPersonals ad. After it was confiscated, appellant's phone received many text messages that appeared to be in direct response to the ad, and the ad's contact number was saved in S.S.'s phone as "Kevin." Considering the remainder of the record, Detective J's testimony did not "substantially influence the jury's decision." *Valtierra*, 718 N.W.2d at 435.

## III. The district court did not abuse its discretion by admitting evidence of typical characteristics of prostitution operations.

Appellant argues that the district court erred by admitting character evidence from Officer B, Chief G, and Detective J. We are not swayed by appellant's arguments.

Appellant relies on *State v. Williams*, 525 N.W.2d 538, 547-48 (Minn. 1994) and *State v. Litzau*, 650 N.W.2d 177 (Minn. 2002). In *Williams*, the supreme court concluded that drug-courier-profile evidence was inadmissible to prove that the defendant knowingly possessed crack cocaine. 525 N.W.2d at 548. The evidence admitted was "clearly and plainly inadmissible" because officers testified "that in their experience most drug couriers behave a certain way . . . and the jury was impliedly urged to infer that since defendant's conduct fit the profile, she must have *known* that her luggage contained crack cocaine." *Id.*

14

(Emphasis added.) However, the supreme court acknowledged that "[t]his is not to say that . . . all testimony by police officers as to techniques employed by other drug dealers or couriers is always inadmissible at trial." *Id.*

In *Litzau*, the supreme court concluded that the cumulative effect of evidentiary rulings deprived the defendant of a fair trial. 650 N.W.2d 177. The court noted that the officer's expert testimony had strayed outside the court-imposed limitations and was instead "drug profile evidence[] akin to character evidence." *Id.* at 185. However, other evidentiary rulings that also contributed to the court's conclusion included "the admission of hearsay testimony[,] . . . unsolicited references to appellant's invocation of his rights to silence and counsel, and submission of a permissive inference instruction deprived appellant of a fair trial," not the drug-dealer-profile testimony alone. *Id.* at 187.

In contrast, in *Barajas*, this court distinguished *Williams* and *Litzau* and concluded that an officer's testimony "was helpful to the jury because it explained how certain items recovered from the apartment where Barajas lived could be used in the sale of drugs." 817 N.W.2d at 223. The officer's testimony:

> established the relevance and significance of items in Barajas's possession by explaining the connection between those items and the sale of drugs. Unlike drug-courier-profile evidence, the challenged testimony does not suggest that, because Barajas possessed similar items or acted similarly to drug dealers, he must be a drug dealer. Rather, the challenged testimony assisted the jury in understanding how items that have legitimate uses also could have potentially unlawful uses or be evidence of unlawful conduct.

15

*Id.* The officer testified about the significance of "prepaid cellular telephones, [an] SD card, packaging materials, and bank receipts recovered from Barajas and the apartment by explaining how and why those items are used by drug traffickers." *Id.* at 212.

Here, Officer B and Chief G testified regarding the relationship between drugs and prostitution activities; Officer B and Detective J testified regarding the significance of cash found on appellant's person while S.S. had no cash on her, and of photos of cash on appellant's phone; and Chief G and Detective J testified regarding whether sex traffickers take steps to conceal their phone numbers and identities. The officers' testimony, based on their training and experience, helped inform the jury about how seemingly insignificant facts uncovered during the investigation led them to suspect that appellant was promoting prostitution. Further, unlike *Williams* and *Litzau*, the officers' testimony did not go beyond that allowed by the district court. We conclude that the district court did not abuse its discretion by admitting the officers' testimony.

## IV. The district court's admission of hearsay statements made by S.S. and another police authority did not prejudice appellant.

Appellant finally argues that the prosecutor improperly elicited hearsay statements under the guise of questioning officers about the criminal investigation, and the statements' admission was highly prejudicial to appellant. We disagree.

"Hearsay" is a person's out-of-court statement offered as "evidence to prove the truth of the matter asserted," Minn. R. Evid. 801(c), and is generally inadmissible at trial unless it falls within an exception or exemption. Minn. R. Evid. 803, 804, 801(d), 807.

Although appellant appears to frame this issue as an evidentiary error by the district court, we construe it as an issue of prosecutorial misconduct based on appellant's argument that *the prosecutor* improperly elicited hearsay statements. A prosecutor engages in misconduct by violating established standards of conduct or caselaw, *State v. McCray*, 753 N.W.2d 746, 751 (Minn. 2008), and "[o]ur standard of review depends on whether or not there was an objection at trial to the claimed misconduct," *State v. McDaniel*, 777 N.W.2d 739, 749 (Minn. 2010). For unobjected-to misconduct, we apply a modified plain-error test. *McDaniel*, 777 N.W.2d at 749. If an appellant meets their burden of proving that an error was made and that it was plain, the "burden shifts to the [s]tate to demonstrate that the error did not affect the [appellant's] substantial rights." *Id.* For objected-to misconduct, we apply a two-tiered harmless-error test based on the seriousness of the misconduct. *Id.* "For more serious prosecutorial misconduct, [appellate courts] have reversed unless the misconduct is harmless beyond a reasonable doubt." *Id.*

Appellant challenges two portions of testimony. First, Officer B's unobjected-to testimony:

> Prosecutor: Through the course of your contact with [S.S.] were you able to confirm whether or not [S.S.] was working as a prostitute?
> [Officer B]: Yes.
> Prosecutor: And was she?
> [Officer B]: Yes.

Second, Chief G's testimony that appellant objected to during trial:

> Prosecutor: So did you conduct additional investigation?
> [Chief G]: Yes.
> Prosecutor: And what did you do after that?

> [Chief G]: I contacted another law enforcement agency and asked if they had had contact with Mr. Anthony and I was told they had.

The district court ultimately asked the state to restate its question and did not rule on appellant's objection to Chief G's testimony.

As to Officer B's testimony, even though the prosecutor plainly erred by eliciting inadmissible hearsay, the state has met its burden to demonstrate that its admission did not affect appellant's substantial rights. *See State v. Sontoya*, 788 N.W.2d 868, 873 (Minn. 2010) (concluding that defendant's substantial rights were not violated by improper admission of testimony when substantial evidence supported his guilt). The contents of the MegaPersonals ad and Officer B's testimony regarding his text exchange with the contact number supports that S.S. was a prostitute. Both the nurse and physician's assistant who examined S.S. the day after her arrest testified that S.S. reported being "pimped out" by a male to hundreds of people. Text messages between S.S. and appellant recovered from S.S.'s phone support that she was engaging in prostitution.

As to Chief G's testimony, although "[i]mproper testimony by a state's witness *may* be considered prosecutorial misconduct [justifying] reversal," we conclude that the state committed no prosecutorial misconduct here. *State v. Patzold*, 917 N.W.2d 798, 807 (Minn. App. 2018) (emphasis added), *rev. denied* (Minn. Nov. 27, 2018). We are less likely to find prosecutorial misconduct when "the state [un]intentionally elicits impermissible testimony." *Id.* The context of Chief G's testimony makes clear that the state was trying to elicit information regarding the scope of his investigation, not information he received from other law-enforcement agencies regarding appellant. The

18

state subsequently restated its question and refocused Chief G on his own investigation. Even assuming without deciding that the state's elicitation of impermissible testimony from Chief G was prosecutorial misconduct, we are convinced that it was harmless beyond a reasonable doubt. *McDaniel*, 777 N.W.2d at 749.

Appellant further argues that the cumulative impact of the prosecution's misconduct and the district court's admission of inadmissible evidence in this case qualifies as prejudicial error that justifies granting him a new trial. We are not convinced.

If the cumulative impact of several errors taken together "had the effect of denying [an] appellant a fair trial," they may be entitled to a new trial. *State v. Yang*, 774 N.W.2d 539, 560 (Minn. 2009) (quotation omitted). However, cumulative error is generally reserved for "very close factual case[s]." *State v. Erickson*, 610 N.W.2d 335, 340 (Minn. 2000) (quotation omitted). When considering a cumulative-error argument, we review both the egregiousness of the errors and the strength of the prosecution's case. *See State v. Cermak*, 350 N.W.2d 328, 333-34 (Minn. 1984).

Here, the state's evidence against appellant was overwhelming, and we conclude that the minimal errors made by the prosecution and by the district court in this case did not deny appellant a fair trial, nor were they prejudicial.

**Affirmed.**