STATE of Minnesota, Respondent,

v.

**Howard Daniel UNDERWOOD, Appellant.**

**No. 48752.**

Supreme Court of Minnesota.

May 11, 1979.

---

Thomson & Nordby and Jack S. Nordby, Mark W. Peterson, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and Jane Prohaska, Sp. Asst. Atty. Gen., St. Paul, Douglas L. Ruth, County Atty., Owatonna, for respondent.

Heard before ROGOSHESKE, KELLY and SCOTT, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant, Howard D. Underwood, a 49-year-old father of six, was charged with aggravated assault after shooting and seriously wounding 22-year-old Michael Herdina during a scuffle at the Serviceman's Club in Blooming Prairie, Minnesota. At his trial in Steele County, defendant freely admitted shooting Herdina but claimed that the shooting was justified as self-defense. The jury found defendant guilty as charged and he was sentenced to a term of imprisonment not to exceed 5 years. This appeal followed.

In order to best comprehend the issues raised by defendant on appeal, the facts surrounding the incident must be set out with some particularity. In addition to his employment as a mail carrier and insurance agent, defendant was the manager of the Serviceman's Club in Blooming Prairie. At the time in question, admittance to the club was limited to members of either the VFW, the American Legion, or persons who had a social membership. As manager, defendant was required to enforce the club's "members only" policy. Herdina, a resident of Blooming Prairie, had applied for membership in the Serviceman's Club but had been turned down and was not a member. On several occasions he had been ordered out of the club by defendant.

On October 15, 1976, defendant was involved in a fight with two young men, friends of Herdina, near the Blooming Prairie Municipal Liquor Store. Defendant "came out on the short end of it" and the following morning purchased a .32 caliber handgun for protection.

On October 21, 1976, defendant saw Herdina at the Municipal Liquor Store and asked him for repayment of a $10 loan. Herdina paid it and stated to the defendant, "Well, we're even now." The defendant's response was disputed, Herdina claiming that defendant replied, "Yeah, for now," and defendant testifying that he merely remarked, "All but the interest."

Later that same evening, Herdina went to the club to speak with the club's bartender who was a friend of his. Upon Herdina's arrival, he was approached by defendant who told him he would have to leave the club or he would call the police. When Herdina refused to leave, a confrontation ensued. There is conflicting testimony as to the extent of the fight, but during a break in the scuffle defendant went down the back stairs of the club and, bleeding from facial wounds, leaned against a nearby parked vehicle. Meanwhile, Herdina was being restrained at the top of the stairs by defendant's son. Herdina then ran down the stairs after the defendant, allegedly to "straighten things out" between them. He rushed toward defendant who drew his gun and shot him in the abdomen. The evidence relating to the specifics of the shooting was also in conflict. Defendant testified that he told Herdina to "hold it" and that Herdina replied, "I'll kill you." None of this was heard by Tim Boever, a club patron, who was standing nearby. Boever testified that moments before the shooting, defendant had stated to him that "* * * he [Herdina] should be put in a hole in the ground."

Herdina was taken to the hospital where he underwent emergency surgery. He had recovered at the time of trial although the bullet remained lodged in muscle tissue near his spine.

It is well settled that in a criminal case the state has the burden to establish, with respect to each and every element of the crime, the guilt of the defendant beyond a reasonable doubt, including the absence of justification. *State v. Columbus*, 258 N.W.2d 122 (Minn.1977). On this appeal,

defendant contends that the state has not met this burden and therefore his conviction must be overturned.

The rules are clear concerning the bases and scope for reviewing sufficiency of the evidence in a criminal case:

" * * * When reviewing and evaluating the sufficiency of the evidence to support a conviction, this court will not try the facts anew. When determining the sufficiency of the evidence, the scope of review is limited to ascertaining whether, upon the evidence contained in the record, the jury could reasonably find the defendant guilty of the offense charged." (Citations omitted.) *State v. Taylor*, 258 N.W.2d 615, 622 (Minn.1977).

In the case at bar, a reading of the record reveals a very close factual case. It was brought out during the examination of the complaining witness that he had a record of convictions ranging from open container and purchase of liquor as a minor to disorderly conduct (twice) and obstructing justice. He had been involved in an altercation with a police officer which resulted in the conviction for obstructing justice and when arrested on the open container charge, he had made threats of damage to the home of one of the arresting officers. Although the severity of the beating on the night of the shooting is in question, it is clear from the record that Herdina was getting the better of the fight preceding the shooting. Defendant received a cut, was bleeding from the face, and three witnesses said he was knocked to the floor. Glen Willert, a prosecution witness who was close to the fight, said Herdina hit defendant in the back, knocked him down a couple of times, and continued to hit him. Willert testified he thought Herdina would kill defendant on the spot and pulled Herdina off. The record also indicates that defendant left the club and went outside at the first opportunity and that Herdina followed him down the stairs and came at him quickly. The above evidence tends to show that defendant was not the aggressor and may have entertained a reasonable belief that he was in danger of death or great bodily harm. On the other hand, there is testimony that the fight at the club was no more than a few pushes and never approached serious injury to defendant. Further undermining defendant's claim of self defense was the testimony of Tim Boever that defendant had stated shortly before he shot Herdina that "he [Herdina] should be put in a hole."

It appears that defendant may have had some justification for his actions. According to some testimony he first requested Herdina to leave the premises and then, as he started toward the phone to call the police, Herdina attacked him. It is undisputed that Herdina had no business being in the club on that occasion and that defendant had the right to ask him to leave. Nor is it contested that after the parties to the fight were separated, defendant retreated down the back stairs. Thus, it seems to us that this is simply a case of a citizen rightfully defending himself against an assailant half his age whom he knew to be aggressive.

After listening to all the testimony and weighing the credibility of the witnesses, the jury, however, decided that the state proved beyond a reasonable doubt that defendant did not act in self-defense. On review, this court must take the evidence most favorable to the state, in whose favor the verdict was returned. If the jury acted with due regard for the presumption of innocence and the necessity of overcoming it with proof beyond a reasonable doubt, this court should not disturb its verdict. *State v. Collins*, 276 Minn. 459, 150 N.W.2d 850 (1967), certiorari denied, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968).

Notwithstanding the fact that we find that the verdict was supported by the evidence, we nevertheless are compelled to reverse the decision of the trial court because of the prejudicial effect of four specific errors committed below. These errors may have had grave consequences because of the closeness of the case. We will discuss each error separately.

During the cross-examination of Michael Herdina, defense counsel attempted to elicit

testimony that Herdina had considered bringing a civil lawsuit against defendant for injuries sustained as a result of this incident:

"Q. [By Mr. Casey, defense counsel] Are you interested in a civil suit against Mr. Underwood to attempt to collect some money from him?

"Mr. Ruth [prosecutor]: I'll object, Your Honor. That's irrelevant, immaterial.

"The Court: Sustained.

"By Mr. Casey:

"Q. Have you retained an attorney to represent you on this matter?

"Mr. Ruth: Same objection, Your Honor.

"The Court: Sustained.

"By Mr. Casey:

"Q. Did you talk to the deputy sheriff about your costs and your loss of work when you were in the hospital?

"Mr. Ruth: Same objection, Your Honor.

"The Court: Sustained."

The defendant subsequently made the following offer of proof:

"Your Honor, we offer to show and hereby offer to show by the witness Mike Herdina that he has talked to a private attorney concerning his collection of damages in connection with this incident, also that he was concerned about the costs that he is incurring for being in the hospital and loss of work.

"If he should deny that he has talked about these matters of costs and loss of work, that we can cross-examine and impeach him by the statement he gave on October 25, 1976, to Wesley Wilker, whereby Mike Herdina asked the deputy sheriff about costs that he has incurred for being in the hospital and for loss of work, and also by his statement as shown on page 52 of the omnibus hearing where he feels that—was asked the question, 'You have made a statement that you think Mr. Underwood ought to pay your medical bills?' And his answer was, 'I think someone should, not that I need to. I've got my own insurance. but—.'

"This offer is made for the purpose of impeaching the witness and showing that his testimony is subject to impeachment on weight as to its value because of his claim against Underwood so made, and this is irregardless of whether or not he signed the complaint, because I think that his testimony is vital and the jury should be entitled to this weight to judge his testimony by that—those questions and his answers, and I so offer."

Defendant asserts that this evidence was proper impeachment and its exclusion was prejudicial error.

In *State v. Goar*, 311 Minn. 560, 561, 249 N.W.2d 894, 895 (1977), we stated the general rule that a prosecuting witness may be cross-examined to show the pendency of a civil action for damages by the witness against the accused. The state correctly points out that in the *Goar* case we specifically refrained from deciding whether a witness may be cross-examined regarding a contemplated lawsuit. We see no reason why the rule should be so limited, however. See, *State v. Rowell*, 244 N.C. 280, 93 S.E.2d 201 (1956) (dictum); see generally Annotation, 21 A.L.R.2d 1078. It is a general rule that all evidence which may tend to impeach a witness is relevant. Because evidence of defendant's conviction would be admissible in a subsequent civil action brought by Herdina under Rule 803, subd. 22, Minnesota Rules of Evidence, Herdina has a decided interest in the outcome of the trial and defendant should be entitled to introduce this evidence. There may be instances, although rare, where the probative value of the impeachment evidence may be outweighed by its tendency to prejudice or confuse the jury. In such cases, evidence that a prosecuting witness has contemplated filing a civil lawsuit against the defendant may be properly excluded. This, of course, is a matter wholly within the sound discretion of the trial court. In the case before us we believe that the jury was entitled to hear this evidence and that its exclusion was detrimental to the defendant.

■ Defendant's next claim of error concerns testimony elicited by his own counsel on cross-examination of one of the arresting officers:

"Q. Did you talk to him [defendant] any after you got back to Owatonna?

"A. I had asked Howard after we got back in the booking area of the Steele County Law Enforcement Center if he would consent to place the statement that he had just given me on tape and he said no. He stated 'I think I've said enough.' "

This court has addressed the issue raised by defendant and related matters on numerous occasions. See *State v. Walker*, 306 Minn. 105, 235 N.W.2d 810 (1975), certiorari denied, 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976); *State v. Roberts*, 296 Minn. 347, 208 N.W.2d 744 (1973); *State v. Beck*, 289 Minn. 287, 183 N.W.2d 781 (1971). It has consistently been held in those cases that comments on an accused's right to exercise the rights afforded by the Fifth and Sixth Amendments are not admissible unless absolutely necessary as foundation. See *State v. Combs*, 292 Minn. 317, 195 N.W.2d 176 (1972). In *State v. Beck*, supra, we stated:

" * * * The potential prejudicial effect, whatever the intent, was to encourage the jury to speculate that defendant had remained silent at the time of his arrest and that he did so because he was guilty * * *." 289 Minn. 292, 183 N.W.2d 784.

The facts of the instant case reveal a distinguishing feature. Here, the testimony was in response to a question asked by defense counsel. The state maintains that this distinction is sufficient to vitiate the effect of the aforementioned cases. Defendant nevertheless submits that the answer was unresponsive and should be characterized as error. While the defense attorney has a certain responsibility to limit the cross-examination so as to avoid areas which he knows may lead to objectionable testimony, he may not always be able to control the responses offered by one of the state's witnesses. To avoid the problem occasioned by the blurting out of such testimony, the state has a duty to properly prepare its own witnesses prior to trial.

We do not mean to imply that a defense counsel could bootstrap a reversal by eliciting improper testimony from a prosecution witness on cross-examination. Such a tactic would be highly improper and would not be favorably received by this court. There is no indication that any such attempt was made in the instant case, however. It might well be that were this the only error, or were this error to arise in another case, reversal would be unnecessary. Because of the nature of this case we believe that the officer's improper testimony may have contributed to the defendant's prejudice and cannot be considered harmless.

■ We now take up what may be the most grievous of all the errors committed below. It concerns an exchange between the prosecutor and the defendant on cross-examination:

"Q. [By Mr. Ruth] Mr. Underwood, under Minnesota law did you register that firearm after you purchased it?

"A. [By defendant] No. I'm not familiar with the—

"Q. Did you obtain a permit to carry that firearm?

"A. No.

"Mr. Casey: Your Honor, I don't think there is any showing that he knew that it was necessary. I don't know if it is or not. Object to this as incompetent, irrelevant and immaterial.

"The Court: Overruled. The answer may stand.

"By Mr. Ruth:

"Q. Mr. Underwood, are you familiar with a Minnesota law, Section 624.714, making it a gross misdemeanor to have on your person a firearm without a permit?

"A. No, I'm not.

"Mr. Casey: Just a minute.

"The Court: Sustained."

The general rule is that evidence of other crimes or wrongs committed by the defendant is not admissible unless it is for the

purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, Minnesota Rules of Evidence, Rule 404, subd. b, or to impeach the credibility of a witness, but only if it concerns his truth or veracity. Rule 608, subd. b.[1] Failure to obtain a firearm permit clearly does not relate to truth and veracity. Therefore, if the testimony was admissible it would have to go to proving motive, opportunity, etc. *State v. Sweeney*, 180 Minn. 450, 231 N.W. 225, 73 A.L.R. 380 (1930). Although the trial court found that the evidence did serve the aforementioned purpose, we find this conclusion to be of questionable merit. As defendant points out, the purchase or possession of the gun may have been relevant to that end, but the relevance of the violation of the permit requirement is much more attenuated.

The purpose behind the limitation on the introduction of evidence of other crimes committed by defendant is clear; the defendant is on trial for a particular crime and the jury's determination of guilt or innocence should not be influenced by its knowledge of a defendant's prior criminal activity.

In *State v. Swanson*, 307 Minn. 412, 240 N.W.2d 822 (1976), a case factually similar to the one presently before us, we held that the prosecutor's inquiry was error but, because of the trial court's ruling and cautionary instruction, not reversible error. Such is not the case here. The jury, although later instructed that there was no illegality involved in defendant's possession or purchase of the gun, may have been unduly influenced by this exchange.

■ The defendant finally contends that the trial court's instruction improperly prejudiced defendant. The court instructed the jury in part:

> "Under the law a Defendant is a competent witness in his own behalf, and you

should not discredit his testimony merely because he is charged with a crime. The Defendant has given his testimony, and you are the judges of the weight which ought to be attached to it. His testimony should be weighed as the testimony of any other witness; considerations of interest, appearance, manner, and other matters bearing upon the credibility apply to the defendant in common with all witnesses. He is directly interested in the result of the trial. In determining the weight to be given to the testimony of the Defendant, it is proper for you to take such interest into consideration. You are to give to his testimony such weight as under all of the circumstances you think it is entitled to. You have the right to consider his situation, his interest in the result of the trial, the temptation which may exist under the circumstances to testify falsely, and everything appearing in the case bearing upon his credibility, and to give to his testimony just such weight as you think it is entitled to, no more and no less. His testimony is to be considered with all of the other evidence in the case. Likewise, you should consider to what extent, if any, any other witness on this trial may have an interest in the result of the trial, as I have said, or in testifying in the manner in which he did, and you are to consider to what extent, if any, such interest has an influence upon his testimony. You should apply the same tests as to credibility and weight to the testimony of every witness, sworn on the trial, including the Defendant.

\* \* \* \* \* \*

"Except as otherwise provided by law, in every criminal proceeding, a person is presumed to be responsible for his acts and the burden of rebutting such a presumption is upon him."

---

1. This case was tried before the effective date of the Minnesota Rules of Evidence. The Eighth Circuit Court of Appeals has noted, however, that the "other crimes" requirement in Rule 404, subd. b, Federal Rules of Evidence, is consistent with the common law and with the decisions of this circuit. *United States v. Calvert*, 523 F.2d 895 (8 Cir. 1975), certiorari denied, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). Minn.Rule 404, subd. b, is identical to the Federal rule and therefore is instructive in this case.

Defendant maintains that by singling defendant out in the credibility instruction, the court may have influenced the jury to disbelieve defendant's testimony. We concur. See *United States v. Standing Soldier*, 538 F.2d 196 (8 Cir.), certiorari denied, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976); *United States v. Bear Killer*, 534 F.2d 1253 (8 Cir.), certiorari denied, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976); *United States v. Brown*, 453 F.2d 101 (8 Cir. 1971), certiorari denied, 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972). Because of the overwhelming guilt of the defendants in the above cases, the Court of Appeals did not feel compelled to reverse the convictions. Here, however, we have a very close factual case, one that depends to a great extent on the credibility of the defendant. We believe that the defendant who takes the stand should be treated as any competent witness and that the jury should judge his testimony accordingly, without any instructions that may create unwarranted suspicion.

■ Similarly, the presumed responsibility instruction was improper in this case. An instruction of this nature may have the effect of confusing the jury and subverting the presumption of innocence so important to our judicial process. We need not decide whether this instruction may ever be given since it was clearly inappropriate in this case. Cf. *State v. Bott*, 310 Minn. 331, 246 N.W.2d 48 (1976) (instruction held proper in context of insanity defense). Here there was no contention that defendant was not responsible for his acts or that he did not have the required intent. On the contrary, the defendant openly admitted the shooting, raising justification as a defense. It may well be that the trial court's instructions on the presumption of innocence may have overcome any misapprehension caused by the responsibility instruction, but we are not inclined to excuse such an error in a case as close as the one before us.

We wish to once again stress that none of the aforementioned errors standing alone or arising under different factual circumstances would necessarily be sufficient to require reversal. In the case at bar, there was a great deal of conflicting testimony and the factual determinations must have been difficult. Under these conditions, any error, however small, may have prejudiced defendant. Considering the cumulative effect of the errors committed below, we are compelled to reverse.

Reversed and remanded.