*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2328**

State of Minnesota,
Respondent,

vs.

Willie Ellis Bardney,
Appellant.

**Filed November 17, 2014
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-13-15952

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant Willie Bardney challenges his second-degree assault conviction, asserting that the district court plainly erred when it interrupted appellant's testimony at

trial to remind the jury of the credibility instruction, and that the prosecutor committed misconduct. We affirm the jury's verdict because the credibility instruction did not affect Bardney's substantial rights, and the prosecutor did not commit misconduct.

**FACTS**

Respondent State of Minnesota charged Bardney with second-degree assault for an altercation that occurred between Bardney and his neighbor, V.G., over odiferous drugs. On May 18, 2013, Bardney resided with his girlfriend, A.A., in an upstairs unit of a Minneapolis duplex. V.G. lived in the first-floor unit of the same duplex with a friend, M.H., and her son. Throughout the day and evening on May 18, Bardney and A.A. drank alcohol. During the day, Bardney went downstairs to speak to V.G. about the drug smells that were floating up into the upper unit.

Later the same day, after continuing to smell drugs Bardney went downstairs to speak with V.G. During the second encounter, Bardney spoke with M.H. on the front porch of V.G.'s unit. Bardney then left the downstairs unit and went upstairs to his unit. Bardney grabbed a kitchen knife and put it in his pocket. Soon after, Bardney went back downstairs, entered V.G.'s unit through the unit's front door, and stabbed V.G.

Both V.G. and Bardney testified at trial. V.G. testified that during the second encounter, while Bardney and M.H. spoke on the front porch, Bardney was yelling and "talking about killing me, my family, calling me all kinds of names." V.G. testified that, once Bardney was inside his unit, he asked where "that motherf--ker [V.G.] is" and charged and swung at V.G.; V.G. ducked, swung back, and pushed Bardney away. Bardney then stabbed V.G. three times in both the bicep and chest areas and told V.G.,

2

"Motherf--ker, I'm going to kill you." During this altercation, Bardney used a kitchen knife and some other object that put a "hole" in V.G.'s arm. V.G. backed away, grabbed a box cutter, and swung at Bardney. Bardney then ran out the door and upstairs to his unit.

Bardney asserted a self-defense claim. His testimony at trial differed from V.G.'s testimony in the following significant ways: (1) that after arguing back and forth, V.G. pushed Bardney first; (2) that V.G. swung the box cutter and cut Bardney on his left hand before Bardney stabbed V.G. in the arm or chest areas; (3) that Bardney attempted to back away from V.G., but V.G. ran up to Bardney and Bardney then stabbed V.G. in the left arm; (4) that V.G. "[came] at" Bardney again, and Bardney stabbed V.G. in the chest; and (5) that Bardney attempted to leave V.G.'s unit, but V.G. blocked him inside the unit. After Bardney left V.G.'s unit, he ran upstairs to his unit, kicked out the kitchen window, and jumped out of the window.

The jury found Bardney guilty of second-degree assault. This appeal follows.

**DECISION**

**I.**

Bardney contends that he is entitled to a new trial because his rights were substantially affected when the district court interrupted his testimony to remind the jury of the court's credibility instruction. A review of the trial transcript shows no objection by Bardney to the district court's statement at the time it was made. "Ordinarily, the defendant's failure to object to an error at trial forfeits appellate consideration of the issue." *State v. Ramey*, 721 N.W.2d 294, 297 (Minn. 2006). This court may review unobjected-to instructions if the instruction constitutes plain error that affects substantial

3

rights or is an error of fundamental law. *State v. Scruggs*, 822 N.W.2d 631, 642 (Minn. 2012).

"The plain-error test requires: (1) an error; (2) that is plain; and (3) the error must affect the defendant's substantial rights." *State v. Larson*, 787 N.W.2d 592, 600 (Minn. 2010). "An error is plain if it is clear or obvious, and usually this is shown if the error contravenes case law, a rule, or a standard of conduct." *State v. Davis*, 735 N.W.2d 674, 681 (Minn. 2007). If all three prongs are met, this court then determines whether the error needs to be corrected to ensure the "fairness and the integrity of the judicial proceedings." *Larson*, 787 N.W.2d at 600.

During Bardney's direct testimony, the following exchange occurred:

> [Defense counsel]: What did you do?
> [Bardney]: Then [V.G.] went outside the door and he closed the door behind himself and put his foot on the door so I couldn't get out. So I came to the door, I was at the door, [M.H.] was in front of me but she was on the phone calling the police -- 911 and he tried to keep me in there until the police get there. So I put my shoulder up against the door --
> [Prosecution]: Objection, calls for speculation.
> THE COURT: I'll allow it.
> [Defense counsel]: So you're putting --
> THE COURT: Members of the Jury, part of the credibility determination that I gave you earlier, the long instruction, had a number of factors that you could consider. Obviously that applies to Mr. Bardney's testimony as well as the testimony of any other witness. You may proceed.
> [Defense counsel]: So what -- When you're saying you're putting your shoulder up against the door, what are you doing?

4

Bardney alleges that the district court's instruction improperly singled him out and cast doubt on his testimony, constituting plain error. The state counters that no error was made.

Bardney relies on *State v. Underwood*, 281 N.W.2d 337, 339 (Minn. 1979), to support his argument that plain error affecting his substantial rights was made by the district court. We agree. In *Underwood*, the supreme court held that the district court's credibility instruction that went on at length about the defendant's interest in the result of the trial and his temptation to testify falsely singled out the defendant and was improper. 281 N.W.2d at 343-44. Similarly, the district court here improperly reminded the jury of the credibility instruction during Bardney's testimony, thus singling out Bardney. *See State v. Bishop*, 289 Minn. 188, 195, 183 N.W.2d 536, 540 (1971) ("It is generally held that it is improper for the court to single out particular witnesses and charge as to their credibility."). Accordingly, it was error to remind the jury of the credibility instruction during Bardney's testimony. The error was plain because this error contravenes caselaw. *State v. Ihle*, 640 N.W.2d 910, 917 (Minn. 2002) (describing that "plain" is synonymous with "clear" or "obvious").

Under the third prong of the plain-error analysis, the defendant bears the heavy burden of proving that the error was prejudicial and affected the outcome of the case. *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998) *holding modified by Ramey*, 721 N.W.2d at 294. A plain error is prejudicial if there is a "reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Id.*

5

Bardney's reliance on *Underwood* does not satisfy his burden. In our eyes, the challenged instruction in *Underwood* was much more concerning than the instruction at issue here. 281 N.W.2d at 343. Additionally, even though the supreme court reversed the defendant's conviction in *Underwood*, the court noted that the combination of four different trial errors required reversal due to the "closeness" of the case, *id.* at 340, and that any of the errors standing alone would not require reversal, *id.* at 344.

Here, unlike the district court's credibility instruction in *Underwood*, the district court did not address Bardney's temptation to testify falsely nor did it go on at length about Bardney's interest in the case. The challenged instruction applied to Bardney's testimony as well as to other witnesses. Even though credibility was key in this case, the facts of this case do not suggest it was as close as the facts in *Underwood*. The gist of the witness testimony concerning the assault suggested that Bardney was the aggressor and that his actions were not in self-defense. This conclusion is supported by the fact that Bardney returned to his unit to retrieve a knife, and that V.G. suffered three stab wounds while Bardney suffered only a small cut on his hand. Lastly, unlike the instruction in *Underwood*, the district court's instruction was not compounded by multiple other trial errors.

Moreover, the district court's instruction referred back to its original credibility instruction, which instructed the jury that it "must decide what testimony to believe and how much weight to give it." The district court also told the jury that had the court "said or done anything that you think would seem to indicate any opinion by [the court], you should disregard that." Thus, this error did not have a significant effect on the jury's

6

verdict. Accordingly, Bardney has not met the heavy burden of proving that the district court's instruction substantially affected his rights.

## II.

Bardney argues for the first time on appeal that the prosecutor committed misconduct that deprived him of a fair trial. Where, as is the case here, an appellant challenges unobjected-to prosecutorial conduct, we apply a modified plain-error test on appeal. *Ramey*, 721 N.W.2d at 302. Under the modified plain-error test, the defendant must first prove that a plain error was made. *State v. Martin*, 773 N.W.2d 89, 104 (Minn. 2009). "If plain error is established, the burden shifts to the prosecution to demonstrate that the error did not affect substantial rights. An error affects a defendant's substantial rights only if there is a reasonable probability that the error actually impacted the verdict." *Id.* If these burdens are met, this court then "assesses whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Id.* Bardney alleges two instances of prosecutorial misconduct.

First, Bardney contends that the prosecutor's questions during his cross-examination were misconduct because they sought legal conclusions and factual determinations regarding elements of the second-degree assault charge. In sole support of his argument, Bardney relies on two factually distinct cases. In both cases cited by Bardney, *State v. Moore*, 699 N.W.2d 733, 739 (Minn. 2005), and *State v. Sontoya*, 788 N.W.2d 868, 873 (Minn. 2010), the issue was the admission of opinion testimony by an expert witness. Specifically, the experts in both cases gave testimony involving legal conclusions. Here, the prosecution asked Bardney whether he used the knife as a weapon

7

and whether the knife was "capable of producing death or great bodily harm." Although the prosecution's questioning did ask Bardney to make a legal conclusion involving whether he used a dangerous weapon during the assault, this element of the offense was not in dispute at trial.

Moreover, the concern that opinion testimony may "unduly influence a jury" is not implicated here. *Sontoya*, 788 N.W.2d at 877. Indeed, the Minnesota Rules of Evidence permit opinions on ultimate issues if such testimony is helpful to the fact-finder. Minn. R. Evid. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). Because the primary issue at trial was not whether the state proved each element of the charge but whether Bardney acted in self-defense, it was likely helpful to the jury to establish the underlying charge and focus on the proffered defense. We see no undue influence with allowing a defendant to testify about the object he used during the assault and the possibility of inflicting bodily harm from such object. Therefore, appellant cannot establish that questioning him about the knife used in the assault was plain error.

Second, Bardney claims that the prosecutor improperly shifted the burden of proof in two different instances. A prosecutor can improperly shift the burden of proof if he or she implies that the defendant has the burden of proving his innocence. *Martin*, 773 N.W.2d at 105. "Misstatements of the burden of proof are highly improper and would, if demonstrated, constitute prosecutorial misconduct." *State v. Hunt*, 615 N.W.2d 294, 302 (Minn. 2000). To determine whether the prosecutor improperly shifted the burden of proof, this court reviews "the closing argument as a whole, rather than just selective

8

phrases or remarks that may be taken out of context or given undue prominence." *State v. Carridine*, 812 N.W.2d 130, 148 (Minn. 2012). The first alleged misconduct occurred in the prosecutor's closing argument:

> In light of all the evidence he had to admit he had a dangerous weapon, that he used a dangerous weapon that he intentionally inflicted bodily harm on [V.G.] when he repeatedly stabbed him. But while he admitted those things, he denies he's guilty of the offense of second degree assault.
> And his denial comes in the form of a claim that he acted in self-defense. And he wants you to believe -- No, strike that. *He needs you to believe he acted in self-defense* because if he did not act in self-defense, and most assuredly he did not, he is guilty of the charge before you, assault in the second degree.
> And as sure as I stand here today, [defense counsel] will get up before you at the conclusion of my summation and submit two things to you on behalf of his client. He will suggest to you that the evidence shows the defendant acted in self-defense.

(Emphasis added.) Later in the closing argument, the prosecutor stated:

> And when he became aware the police were coming, . . . he half dressed jumps out a window to get away. What does your common sense tell you about that?
> In a moment [defense counsel] will get up before you and argue strenuously that this was self-defense. *He will try to convince you, to sell you.* I submit to you the evidence is such that you should not be. There is a Latin term, Caveat emptor, let the buyer be ware [sic]. The evidence in this case is overwhelming, and it's the totality between all the witnesses and in combination together with the exhibits which cannot be changed, between the testimonial evidence and the standalone physical evidence.

 (Emphasis added.)

Caselaw has held that similar statements made during a closing argument did not shift the burden of proof. In *Carridine*, the prosecution told the jury that the defendant

9

"needs you to believe it because if you don't believe it, he's guilty of murder in the first degree," and "the defendant needs you to believe there was a gun." 812 N.W.2d at 147-48. The supreme court found that these types of comments did not shift the burden of proof and, even if the burden was shifted, it did not affect the appellant's substantial rights because the jury was properly instructed on the burden of proof. *Id.* Because these statements did not shift the burden of proof, Bardney cannot establish plain error.

The second alleged instance of burden-shifting occurred during the prosecutor's rebuttal closing argument:

> [Defense] asked you would you rely on the testimony of [V.G.], [M.H.], and [C.M.] . . . in an important decision that you make. And that's where he left it. Three witnesses. The State yesterday alone called nine witnesses and several witness[es] the day before that. Several witnesses this morning. There is no one witness in this case, and the State is certainly not asking you to rely on [V.G.], [M.H.], and [C.M.] alone.
>
> And, in fact, I told you that in my initial summation that it is the totality of all the evidence, of all the witnesses, of all the physical evidence which you can consider. We're looking for the whole truth and not the half truth.
>
> Look at everything in conjunction with each other and in relationship to other items of evidence. That's what a fact finder does. The proof is in the details. And while sometimes this is not the most exciting process, the State has the burden of proof  and took the time necessary to bring forward witness  after witness, point after point to give you all the facts, to give you the totality.

Bardney claims that this statement "misled the jury into thinking that proof beyond a reasonable doubt depends on the quantity of evidence or the number of witnesses." In making this claim, Bardney's brief only reproduced the first paragraph.

10

Bardney relies on *State v. Trimble*, 371 N.W.2d 921, 926 (Minn. App. 1985), *review denied* (Minn. Oct. 11, 1985), to support his "quantity" argument. In *Trimble*, we highlighted that statements arguing that quantities of evidence to rebut the presumption of innocence are improper. *Id.* at 926-27. Reversal, however, was not required because the district court properly instructed the jury on the presumption of innocence, the defendant argued against the prosecutor's theory, and the court told the jury that the prosecutor's argument was an incorrect statement of law. *Id.*

Here, the state never argued that the presumption of innocence disappeared. Rather, the state emphasized that the jury should consider the totality of the evidence, and it appears that the challenged statements emphasized the central question in this case— whether Bardney was acting in self-defense. Accordingly, these statements did not shift the burden of proof and Bardney cannot establish plain error.

Even if Bardney could establish plain error, viewing the record on the whole, the error would not have had a significant effect on the jury's verdict. To determine the effect of the error, we consider "the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Hohenwald*, 815 N.W.2d 823, 835 (Minn. 2012). We will reverse only when the alleged prosecutorial misconduct, "viewed in light of the entire record, is of such serious and prejudicial nature that appellant's constitutional right to a fair trial was impaired." *State v. Haynes*, 725 N.W.2d 524, 529 (Minn. 2007).

After closing arguments, the district court instructed the jury, "Mr. Bardney is presumed innocent of the charge made.  This presumption remains with him unless and until he has been proven guilty."  In addition, the district court told the jury, "If an attorney's argument contains any statement of the law that differs from the law that I give you, guess what, you disregard the law they give you and follow the law that I give you."  *See State v. Shoen*, 578 N.W.2d 708, 718 (Minn. 1998) (holding that this court presumes that the jurors follow the district court's instructions).  Therefore, the district court's instructions negated any error.  *See State v. Pendleton*, 706 N.W.2d 500, 509 (Minn. 2005) (holding that prosecutorial misconduct may be cured by district court instruction).

**Affirmed.**