*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2354**

State of Minnesota,
Respondent,

vs.

Fonati McArthur Diggs,
Appellant.

**Filed February 2, 2015
Affirmed
Hooten, Judge**

Ramsey County District Court
File No. 62-CR-12-9925

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Mark J. Miller, Christopher Hanscom, Minneapolis, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant challenges his convictions of first-degree aiding and abetting sex trafficking of a minor and second-degree aiding and abetting sex trafficking of an adult. Appellant argues that the district court erred by failing to sua sponte grant a mistrial, by

admitting other-acts evidence, and by failing to admit evidence that one of the victims had participated in previous sex-trafficking prosecutions. Appellant also claims that prosecutorial misconduct deprived him of his right to a fair trial and that the district court abused its discretion by imposing consecutive sentences. We affirm.

## FACTS

At the time of the offense, J.S. was a 16-year-old from Superior, Wisconsin, and L.B. was an 18-year-old from Duluth. On June 15, 2012, L.B. asked J.S. to accompany her on a bus ride from the Duluth area to St. Paul to visit appellant Fonati McArthur Diggs, L.B.'s "boyfriend," whom she had previously dated in Duluth. J.S. agreed to take the trip, and L.B. purchased both of their bus tickets. J.S. did not tell her mother where she was going and, in fact, considered the trip to be running away from home.

Appellant and his co-defendant, Timothy Cross, met J.S. and L.B. at the bus station, and Cross drove appellant, J.S., and L.B. to a motel in St. Paul. J.S. had not previously met appellant or Cross, but her understanding was that she was going to be Cross' "girlfriend." J.S. and L.B. both testified that, upon their arrival at the motel, they were directed to separate motel rooms, where each was forced to have sex with appellant and Cross. J.S. testified that while they were at the motel, she was also forced to have sex with two other men. L.B. testified that she was forced to have sex with four other men. L.B. testified that appellant seemed to be in charge. Even after these events, at that time L.B. still considered appellant to be her boyfriend, still loved him, still thought that he loved her, and "wanted to be with him [for] the rest of [her] life."

2

The next day, appellant and Cross required J.S. to change clothes and forced J.S. and L.B. to "walk the strip." J.S. and L.B. understood that they were expected to entice men to have sex with them for money. After L.B. became nauseous and began vomiting, J.S. was instructed to continue to walk the street by herself while appellant and Cross took L.B. off of the street to deal with her illness.

After appellant and Cross drove away with L.B., J.S. used a cell phone to call her mother. Her mother told her to call the police. She did so, and the police picked her up. She underwent a sexual-assault examination, and her mother came to get her later that night.

Meanwhile, unable to find J.S., appellant, Cross, and L.B. slept in the car that night. The next day, L.B. was again required to "go on the street." L.B. testified that appellant told her "to charge $40 for a half-hour" of intercourse. L.B. testified that when she made money by having sex with men, she was supposed to give it to appellant. She testified that, during the week she was with appellant and Cross, she had sex with at least six men for money. Eventually, after L.B. called for assistance from law enforcement, she was picked up by police and later returned to her home in Duluth.

Appellant was charged with two counts of first-degree aiding and abetting sex trafficking of a minor, and two counts of second-degree aiding and abetting sex trafficking of an individual. Appellant and Cross, who was also charged with sex trafficking, were jointly tried before a jury.

In addition to the testimony of J.S. and L.B., two friends of appellant and Cross testified at trial that they knew appellant and Cross were using L.B. as a prostitute. St.

3

Paul Police Sergeant John Bandemer, an expert on human trafficking, also testified that sex traffickers often recruit girls into prostitution by manipulating them into thinking that they have a boyfriend/girlfriend relationship with one of the traffickers. The sergeant believed that this "boyfriend effect" existed between L.B. and appellant, as well as between J.S. and Cross, during the course of the sex trafficking. The sergeant further testified that forced sex is often used in sex-trafficking cases as a "breakdown of the young girl [and] is one of the first things that a trafficker will do." He testified that this "breakdown" allows traffickers to "say that she's their property now and that she's the one that's going to be prostituting for them." He added that sex traffickers "break down young girls' . . . will to fight."

The jury found both appellant and Cross guilty of one count of first-degree aiding and abetting sex trafficking of a minor and one count of second-degree aiding and abetting sex trafficking of an individual.[1] The jury also found that two aggravating factors were proven for each guilty count: (1) both J.S. and L.B. suffered bodily harm during the commission of the offenses; and (2) the offenses involved "more than one sex trafficking victim." *See* Minn. Stat. § 609.322, subd. 1(b) (2010).

At appellant's sentencing hearing, the district court imposed the presumptive guidelines sentence for each count and took into account the aggravating factors found by the jury. For first-degree aiding and abetting sex trafficking, appellant was sentenced to 130 months, plus 48 months for the aggravating factors, for a total of 178 months. For

---

[1] The jury also found Cross, but not appellant, guilty of assault and a weapons-related offense.

4

second-degree aiding and abetting sex trafficking, appellant was sentenced to 48 months, plus 48 months for the aggravating factors, for a total of 96 months.

The district court ordered the sentences to be served consecutively, amounting to an aggregate sentence of 274 months. The district court reasoned:

> I found the testimony at the trial to be . . . shocking in the manner that both [appellant] and Mr. Cross befriended these very young, low-functioning, vulnerable women, got their trust, made promises to them, and then turned on them and used them for the worst possible purposes, treating them with just total disregard for their rights, their feelings. They were threatened. They were coerced. They were subjected to repeated violence.

This appeal followed.

## DECISION

## I.

Appellant argues that the district court erred by failing to sua sponte provide a curative instruction or declare a mistrial after two of the state's witnesses made three statements indicating that appellant and Cross were in a gang. During L.B.'s testimony, the following exchange took place:

> PROSECUTOR: What did you think about the fact of [appellant] letting other men come into your room?
> L.B.: Well, I was from Duluth. When we were up in Duluth, he was always, like, saying stuff about he was in a gang and everything. So I was, like, whatever.
> PROSECUTOR: No, what did you—I mean, in the [m]otel room.
> L.B.: I just pretty much was, like, I'm not going to fight, because they're probably all in the gang, too.

Appellant's counsel objected after L.B.'s second gang reference, but the district court overruled the objection. Outside the presence of the jury, appellant's counsel moved for a mistrial, which the district court denied, noting that the state did not intentionally elicit the brief gang testimony. The district court offered to provide a curative instruction to the jury, which appellant's counsel denied. Appellant's counsel asked the district court "to admonish the [s]tate to not elicit any more gang testimony," and the district court instructed the prosecutor not to ask "any direct questions" that were likely to lead to gang testimony. *See State v. Underwood*, 281 N.W.2d 337, 342 (Minn. 1979) ("To avoid the problem occasioned by the blurting out of [prejudicial] testimony, the state has a duty to properly prepare its own witnesses prior to trial.").

Days later at trial, during the sergeant's testimony, the prosecutor asked, "What did [the state's witness] tell you next of significance?" The sergeant replied, "She mentioned things—that she knows that Mr. Cross and [appellant] were in a gang." Appellant's counsel objected after this third gang reference, and the district court sustained the objection. Appellant's counsel did not move for a mistrial or ask the district court to provide a curative instruction.

On appeal, appellant concedes that the district court did not abuse its discretion by denying his motion for a mistrial after L.B.'s two gang references. Instead, appellant argues that the district court plainly erred by failing to sua sponte provide a curative instruction or grant a mistrial after the district court sustained his objection to the sergeant's gang reference.

6

Where a defendant at trial did not "seek a curative instruction or request a mistrial, the question [on review] becomes whether plain error occurred when the district court, having sustained [an] objection to the testimony . . . , did not act sua sponte to limit the testimony's impact by providing a curative instruction or to eliminate that impact by granting a mistrial." *State v. Washington*, 693 N.W.2d 195, 205 (Minn. 2005) (involving the admission of *Spreigl* evidence). The three-pronged test for plain error requires appellant to show that: (1) the district court committed error; (2) the error committed was plain; and (3) the error affected appellant's substantial rights. *State v. Manley*, 664 N.W.2d 275, 283 (Minn. 2003). Each prong of the test must be satisfied. *Id.* The third prong is satisfied "if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *State v. Vance*, 734 N.W.2d 650, 656 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). Even if plain error is shown, a reviewing court will correct the error "only if it seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Washington*, 693 N.W.2d at 204 (quotation omitted).

Appellant's argument is unpersuasive because the district court did not plainly err, but even if it did, any error did not affect appellant's substantial rights. There is no indication that the prosecutor intentionally elicited the brief gang reference from the sergeant. Appellant's counsel promptly objected on relevancy grounds, and the district court sustained the objection, giving appellant the relief he requested. In *Washington*, the Minnesota Supreme Court rejected the defendant's argument that it was plain error for the district court to not sua sponte give a curative instruction or grant a mistrial because

7

doing so could have interfered with the defendant's trial strategy: "We do not agree that the district court must, or even should, interfere with the trial strategy of the defendant. To act *sua sponte* here would risk highlighting or enforcing rights that the defendant had, for tactical reasons, decided to waive." *Id.* at 205. Finally, given the brevity of all three gang references and the strength of the state's case, there is no reasonable likelihood that any claimed error had a significant effect on the verdict.

We conclude that the district court did not plainly err by failing to sua sponte provide a curative instruction or declare a mistrial after it sustained an objection to the sergeant's brief gang reference.

## II.

Appellant next argues that the district court erred by admitting evidence that appellant and Cross sexually assaulted the victims. Appellant contends that this evidence amounted to other-bad-acts evidence and was admitted in violation of Minn. R. Evid. 404(b). Because appellant did not object at trial to the sexual-assault evidence, the district court's admission of this evidence is subject to plain-error review. *Manley*, 664 N.W.2d at 283 ("When a criminal defendant fails to object to claimed trial errors, our review is for plain error affecting substantial rights.").

At trial, both the prosecutor and appellant's counsel questioned multiple witnesses concerning the forced sexual acts at the motel alleged by J.S. and L.B. During closing arguments, both the prosecutor and appellant's counsel repeatedly used the term "rape" to describe the acts. The prosecutor and appellant's counsel both reminded the jury that appellant and Cross were not charged with criminal sexual conduct. And, appellant's

counsel argued at length that the sexual-assault testimony was not believable and that the state's failure to charge appellant and Cross with criminal sexual conduct indicated that the state did not believe these accusations.

We conclude that the sexual-assault evidence in this case was not evidence of "other" bad acts of appellant, but rather was intrinsic to the charged offenses. In *State v. Hollins*, this court explained:

> In a criminal prosecution, evidence of another crime is intrinsic to the charged crime and therefore admissible without regard to Minn. R. Evid. 404 if: (1) the other crime arose out of the same transaction or series of transactions as the charged crime, and (2) either (a) the other crime is relevant to an element of the charged crime, or (b) excluding evidence of the other crime would present an incoherent or incomplete story of the charged crime.

765 N.W.2d 125, 132 (Minn. App. 2009). Here, both J.S. and L.B. testified that they were sexually assaulted by appellant, Cross, and other men during their first night in St. Paul. The sergeant testified that one of the first things sex traffickers often do to break down their victims and establish control is to have a group of men sexually assault the victims. Based on the sergeant's testimony, the sexual assaults of J.S. and L.B. were intrinsic to the charged offenses of sex trafficking.

First, the sexual assaults "arose out of the same transaction . . . as the charged crime," *id.*, because they were committed shortly after the victims were lured into appellant and Cross' scheme, and the sexual assaults were committed in order to establish control and to prepare the victims for sex trafficking.

Second, the sexual assaults were "relevant to an element of the charged crime." *Id.* Appellant was convicted under the statute that prohibits engaging in "sex trafficking." Minn. Stat. § 609.322, subds. 1(a)(4), 1a(4) (2010). Under the definitions statute, "[s]ex trafficking" includes "recruiting . . . *by any means* an individual to aid in the prostitution of the individual." Minn. Stat. § 609.321, subd. 7a(1) (2010) (emphasis added). The definitions statute does not define "recruiting," and non-technical words "are construed . . . according to their common and approved usage." Minn. Stat. § 645.08(1) (2014). The definition of "recruit" includes "to hire or otherwise obtain to perform services"; "[to] secure the services of." *Webster's Third New International Dictionary* 1899 (2002). In light of the sergeant's testimony, one of the means by which appellant and Cross recruited the victims to engage in prostitution was by sexually assaulting them and allowing them to be sexually assaulted by other men at the outset of their scheme.

Accordingly, we conclude that the sexual assaults were intrinsic to the crime of aiding and abetting sex trafficking, and evidence of the sexual assaults was admissible notwithstanding Minn. R. Evid. 404(b). It was not plain error for the district court to admit this evidence.

At oral argument, appellant's counsel effectively conceded that the sexual assaults were intrinsic to the charged offenses, but claimed that the prosecution should have used the term "sexual assault" instead of "rape" because "rape" is a term of art that is overly inflammatory. Appellant's counsel provided no authority to support his claim that the district court erred in allowing the use of the word "rape" to describe a "sexual assault" or

10

"forced sex." And, throughout the trial and without objection, both the prosecutor and appellant's counsel used the term "rape" to describe the forced sex acts. Based upon this record, as well as a lack of legal analysis or authority, we find no merit to appellant's contention that the district court erred in failing to sua sponte order that the term "sexual assault" should be used to describe the forced sexual acts. *See Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (declining to address allegations unsupported by legal analysis or citation).

We also note that the sexual-assault evidence likely falls under the immediate-episode exception to rule 404(b). *See State v. Riddley*, 776 N.W.2d 419, 425 (Minn. 2009) ("[T]he rule excluding evidence of the commission of other offenses does not necessarily deprive the state of the right to make out its whole case against the accused on any evidence which is otherwise relevant upon the issue of the defendant's guilt of the crime with which he was charged.") (quotation omitted). The sexual assaults were committed in order to facilitate the sex trafficking, and therefore the sexual assaults likely constituted immediate-episode evidence. *See State v. Fardan*, 773 N.W.2d 303, 316–17 (Minn. 2009); *Riddley*, 776 N.W.2d at 426–27.

## III.

Appellant next argues that the district court abused its discretion by not admitting evidence "that L.B. had participated in the prosecution of as many as [four] other sex trafficking cases." The district court excluded this evidence because it was irrelevant and overly prejudicial.

11

Evidence is generally admissible if it is relevant and "its probative value is [not] substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *See* Minn. R. Evid. 403. We review the district court's evidentiary decisions for an abuse of discretion. *State v. Richardson*, 670 N.W.2d 267, 277 (Minn. 2003). If a defendant shows that the district court abused its discretion, we will reverse the conviction only if the error "substantially influence[d] the jury's decision." *Id.* (quotation omitted).

Appellant contends that "evidence of L.B.'s involvement in other allegedly similar cases would have called into question the [s]tate's premise that she was *unwittingly* lured into the scenario, as portrayed by the prosecution." But, evidence that L.B. was previously a victim of sex trafficking and participated in past prosecutions is not relevant to whether she was a sex-trafficking victim in this case because consent or knowledge on the part of the victim is not a defense. *See* Minn. Stat. § 609.322 (2010); *cf. State v. Crims*, 540 N.W.2d 860, 867 (Minn. App. 1995) ("[T]he victim's sexual history is normally irrelevant in a sexual assault prosecution."), *review denied* (Minn. Jan. 23, 1996). Any minimal probative value of this evidence was outweighed by the danger that the jury could have misused such evidence or been confused by it. We conclude that the district court did not abuse its discretion by excluding this evidence.

### IV.

Appellant argues that the prosecution "committed misconduct during the examination of witnesses and during . . . closing arguments." Specifically, he argues that: (1) the prosecution "elicited" gang testimony from two of the state's witnesses; and

(2) during her closing argument, the prosecutor "inflam[ed] the passions of the jury by continuously referring to 'the rape,' engag[ed] in improper vouching [of witnesses,] and pre-emptively disparag[ed] the predicted closing arguments of appellant's trial counsel."

Prosecutorial misconduct is subject to different standards of appellate review depending upon whether there was an objection at the time of the alleged misconduct. *See State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006); *State v. Roman Nose*, 667 N.W.2d 386, 401 (Minn. 2003). If there is no objection to prosecutorial misconduct, the standard of review is "whether plain error affected the defendant's substantial rights." *Ramey*, 721 N.W.2d at 299. If there is an objection to prosecutorial misconduct, the overarching question on review is whether the misconduct "impaired the defendant's right to a fair trial." *Roman Nose*, 667 N.W.2d at 401 (quotation omitted); *see also State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012) (analyzing whether objected-to prosecutorial misconduct was harmless beyond a reasonable doubt).

As to the three brief gang references, the district court explicitly found that the first two references were not intentionally elicited. In light of our discussion in Part I, we conclude that there was no prosecutorial misconduct with regard to the three gang references. *See State v. Henderson*, 620 N.W.2d 688, 702 (Minn. 2001) ("As there is no indication the prosecutor persisted in trying to elicit testimony the court had ruled inadmissible, the district court did not abuse its discretion in finding that there was no prosecutorial misconduct."). In any event, the three brief references to appellant's possible gang affiliation could not have impaired appellant's right to a fair trial in the

face of such overwhelming evidence of guilt, and any actual misconduct would be harmless beyond a reasonable doubt.

Appellant's argument that the prosecutor "inflam[ed] the passions of the jury by continuously referring to 'the rape'" is without merit. There was no objection to the use of the word "rape" at any point throughout the trial, and the word was used repeatedly by the prosecutor and appellant's counsel during closing arguments. We conclude that, under the circumstances of this case, the prosecutor's use of the word "rape" did not constitute misconduct, and there was no plain error that affected appellant's substantial rights.

Next, appellant argues that the prosecutor improperly vouched for one of the state's witnesses, J.S., during closing arguments. Specifically, appellant points to these statements:

> We know [Cross] punched [J.S.] We know he threatened her with a gun to her face. . . . So that's true, we know that. She's not lying about that. She's not lying about being punched. She's not lying about [Cross] having to watch over her. . . . She was telling the truth then and she's right on now.

Neither counsel for appellant nor Cross objected to these statements. In *State v. Swanson*, the Minnesota Supreme Court held that the prosecutor's statement, "[T]he state believes [the witness] is very believable," was impermissible vouching on its face. 707 N.W.2d 645, 656 (Minn. 2006) (quotation marks omitted). Here, the prosecutor did impermissibly vouch for J.S. because she indicated that J.S.'s testimony was credible. However, as in *Swanson*, "the impermissible vouching constituted only a small part of the prosecutor's closing arguments," the state's case was strong, and therefore any plain

14

error did not affect appellant's substantial rights. *Id.* at 656. In addition, we note that these particular statements pertain only to Cross' assault charge, not to any of appellant's charges, which further indicates that *appellant's* substantial rights were not affected.

Appellant does not develop his argument that the prosecutor "pre-emptively disparag[ed] the predicted closing arguments of appellant's trial counsel." Therefore, this claim is waived. *See State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) ("An assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection.") (quotation omitted).

Finally, appellant argues that the cumulative effect of the claimed trial errors deprived him of his right to a fair trial. But, because: (1) the district court did not plainly err by failing to sua sponte provide a curative instruction or declare a mistrial after the third of three fleeting gang references; (2) the district court did not plainly err by admitting evidence of the sexual assaults; (3) the district court did not abuse its discretion by excluding evidence of L.B.'s prior sexual history; and (4) there was no prosecutorial misconduct that affected appellant's substantial rights or impaired his right to a fair trial, there was therefore no cumulative error which deprived appellant of a fair trial.

**V.**

Although appellant concedes that the consecutive sentences imposed by the district court are permissive, he argues that his aggregate sentence of 274 months "exaggerate[s] the criminality of [his] conduct." Appellant seems to challenge both (1) the district court's taking into account the aggravating factors found by the jury; and (2)

15

the district court's ordering the sentences to be served consecutively rather than concurrently. "Consecutive sentencing of multiple felonies with multiple victims is permissive and within the broad discretion of the trial court." *Richardson*, 670 N.W.2d at 284.

The district court generally may not impose multiple sentences for offenses committed in a single behavioral incident. *See* Minn. Stat. § 609.035, subd. 1 (2010); *State v. Skipintheday*, 717 N.W.2d 423, 426 (Minn. 2006). Under the multiple-victim exception, however, "courts are not prevented from giving a defendant multiple sentences for multiple crimes arising out of a single behavioral incident if: (1) the crimes affect multiple victims; and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct." *State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012) (quotation omitted). When determining whether a sentence unfairly exaggerates the criminality of an offense, "we are guided by past sentences received by other offenders for similar offenses." *Carpenter v. State*, 674 N.W.2d 184, 189 (Minn. 2004). Appellant fails to cite any cases indicating that his sentence is significantly longer than sentences for comparable sex-trafficking offenses. To be fair, there is very little published Minnesota caselaw concerning sentencing in sex-trafficking cases.

We conclude that the district acted within its discretion by taking into account the aggravating factors that the jury found and sentencing appellant accordingly. Minn. Stat. § 609.322, subd. 1(b), provides for an enhanced sentence if certain aggravating factors are present, including: (1) "the offense involved a sex trafficking victim who suffered bodily harm during the commission of the offense"; and (2) "the offense involved more

16

than one sex trafficking victim." Here, the jury found that both of these aggravating factors were present, and the district court properly added 48 months to appellant's sentence for each count under which he was convicted.

We also conclude that the district court acted within its discretion by ordering appellant's sentences to be served consecutively. Consecutive sentencing for first- and second-degree aiding and abetting sex trafficking is permissive. Minn. Sent. Guidelines 2.F.2.b (Supp. 2011) ("Multiple current felony convictions for crimes on the list of offenses eligible for permissive consecutive sentences found in [s]ection 6 may be sentenced consecutively to each other[.]"); *id.*, 6 (listing these two offenses as eligible for permissive consecutive sentences). Appellant argues that, "[e]ven if true, appellant's conduct and the injuries caused are of the nature contemplated by thes[e] offenses." This argument is without merit. As the district court stated, appellant's conduct was "shocking." Appellant sexually assaulted both victims in order to establish control over them. Just like appellant, Cross received presumptive guidelines sentences for his two sex-trafficking convictions, which the district court imposed consecutively. L.B. testified that she believed appellant, not Cross, was in charge, and other record evidence suggests that appellant was even more culpable than Cross.

Appellant's sentence does not unfairly exaggerate the criminality of his conduct. The district court did not abuse its discretion by imposing consecutive sentences totaling 274 months.

**Affirmed.**

17